PARMELEE VS. THE WESTERN TRANSPORTATION COMPANY.

CONTRACT: *Shipping receipt.—Memorandum thereon.—Through contract? Agency of forwarder for defendant.—Whether evidence sufficient to be submitted to jury.*

1. A shipping receipt recited that the goods were marked " F. M. P., Delavan, Wis. Care W. W. A., Buffalo;" and provided that they were " to be delivered in good order * * as addressed." *Held,*

that in the light of the facts, that the receipt was given by a canal boat, that Buffalo was the terminus of the canal, that the property was addressed to an intermediate consignee at that place, and that the amount of freight charges fixed therein included only those to Buffalo—the court should have instructed the jury that the undertaking as to delivery referred only to the address at Buffalo.

2. A receipt given the owner by H., a forwarder at the place of shipment, stated that the goods were received in store, and in all other respects appeared to be a contract by him as forwarder, but had written thereon the price of freight *from Buffalo*, which H. testified was merely a memorandum made from a circular in his possession. There was no statement of the freight *to* Buffalo, and nothing to show that H. professed to act as agent for the defendant (a company engaged in transporting goods by canal to Buffalo, and by whose boat the goods in this case were shipped), and no proof that he was such agent, except the fact that he shipped goods by it and received goods from it. *Held*, that upon such evidence it was error to submit to the jury the question whether there was a contract by defendant to transport the goods *through* to Delavan.

APPEAL from the Circuit Court for *Walworth* County.

Action to recover the value of goods alleged to have been lost while in the custody of defendant as a common carrier. The complaint avers that about the 4th of October, 1867, the plaintiff delivered to the defendant, at the village of Chittenango, New York, and defendant then and there accepted and received from the plaintiff, as a common carrier, on board of a certain canal boat of the defendant, called the " Michigan of Buffalo," and commanded by one Capt. Freeman as master, certain boxes and chests of clothing, goods and household furniture, the property of the plaintiff, to be conveyed by defendant for plaintiff, from the place aforesaid to the town of Delavan, in this state, by water and land conveyance, and to be delivered at Delavan by defendant to plaintiff, for a certain reward to be paid on delivery thereof; and that said boxes, etc., were marked and directed as follows : " F. M. Parmelee, Delavan, Wisconsin, care of W. W. Arnold, Buffalo." The answer alleged that defendant's contract was to carry only to Buffalo, and also alleged full performance of such contract.

The evidence showed that on the 24th of September,

1867, plaintiff delivered the boxes and chests above mentioned to one Hutchins, a warehouseman at Chittenango; and that Hutchins gave him the following receipt: " [Date] Received in store from *F. M. Parmelee*, the following property: six boxes and two chests of clothing, and every one marked F. M. Parmelee, Delavan, Wisconsin, care of W. W. Arnold, Buffalo. Price of freight from Buffalo, sixty cents per hundred pounds, $30.30. F. H. HUTCHINS." On the 4th of October, Hutchins delivered the goods, at his warehouse (which was on the canal), to the canal boat " Michigan," H. E. Freeman, captain, and took the following receipt therefor: " Received, October 4th, 1867, on boat Michigan of Buffalo, in good order, six boxes and two, chests of furniture, marked F. M. Parmelee, Delavan, Wisconsin, care of W. W. Arnold, Buffalo, to be delivered in like good order without delay, as addressed. Capt. H. E. FREEMAN." He also made out a shipping bill as follows : " Chittenango, N. Y., October 4, 1867. Shipped by F. H. Hutchins, in good order, on board boat Michigan of Buffalo, Captain H. Freeman, of Buffalo, which he hereby agrees to deliver in like good order as consigned, without delay :

| To Whom Consigned. | | Articles. | Weight. | Total. |
|---|---|---|---|---|
| F. M. Parmelee, | | 6 Boxes and 2 | 2030 | 3 04 |
| Delavan, | | Chests of Furni- | Back Charges. | 76 |
| Wisconsin. | Samuel Stephenson. | ture. | Capt. Collect | 3 80 |
| Care of | | | | |
| W. W. Arnold, | | | | |
| Buffalo. | | | FAY H. HUTCHINS." | |

The plaintiff's evidence further tended to show that the packages and their contents were in good condition when received by Hutchins, and remained

unchanged while in his custody. As a witness in his own behalf, plaintiff testified that the packages were received at Delavan on the 2d of November, 1867, and were opened by him within an hour after their arrival; that they were securely packed and strapped with iron; that when they came to his hands they were " in seeming good condition "— " their appearance ' was first-rate," and there was no external indication of their having been opened; but upon opening them, the goods described in the complaint were missing; that he did not know what line they came on from Buffalo; that " the man that shipped them (Hutchins' clerk), said he would ship them clear through ;" that when he delivered the goods to Hutchins, he thought the latter was agent of the defendant company ; that he was so reputed ; that Hutchins said the goods would want a consignee in Buffalo; that witness told him to consign them to whoever he thought best, and he (Hutchins) put on the name of W. W. Arnold.

Mr. Hutchins' clerk, as witness for the plaintiff, testified that as such clerk, he delivered said packages " for the purpose of being transported upon the Erie canal to Buffalo, care W. W. Arnold, and from thence to be transported by other conveyance to Delavan ;" and that the captain of the canal boat " agreed to transport and deliver the same to W. W. Arnold, Buffalo, in good order and without delay, for fifteen cents per hundred pounds."

The evidence for the defense was substantially as follows: Capt. F. H. Freeman testified that he received the aforesaid boxes and chests " as captain or master of the canal boat Michigan, and for the purpose of conveying them on his boat to Buffalo ; " that he had contracted on that day with Mr. Hutchins to take that property to Buffalo and deliver it to the consignee, W. W. Arnold, and received it for that purpose, and that was the only contract he made with anybody

about the property; that the bill of lading above recited was given him at the time by Hutchins; that the $3.04 marked thereon was the canal freight—the price agreed on between him and Hutchins for taking the property to Buffalo; that he surrendered the boat and the goods upon it (in the same condition as when received), at Black Rock to Edward Snyder, her master, who is now in San Francisco; that he (witness) was not agent for the defendant company in any other way than as captain of the canal boat, and had no authority to contract to convey the property beyond Buffalo, the western end of the canal; that the Mr. Stephenson whose name is countersigned upon the bill of lading was either the collector or some one in the office of the collector of canal tolls at Syracuse, and was not in defendant's employ; and that bills of lading are countersigned by the collector. 2. Joseph Dissett testified that as defendant's clerk, on the 14th of October, 1867, he received the packages in question from the canal boat Michigan, at defendant's warehouse on the Erie Basin, Buffalo; that on the next day he put them on carts to be taken to W. W. Arnold's warehouse; and that within half an hour thereafter he received from the cartman the following paper: " BOAT MICHIGAN. Received, Buffalo, 15th October, 1867, from the Western Transportation Co., the following packages in good order :

| F. M. Parmelee, | Delavan, Wis. |
|---|---|
|  | 6 Boxes Furniture, |
| Care | 2 Chests, |
| W. W. Arnold, | Charges, $4.04. |
|  | J. C. & E. T. EVANS, |
| Buffalo. | THOS. MITCHELL." |

The testimony of this witness tended further to show that the packages were in good condition, and their contents apparently undisturbed when they

came into his possession, and when put upon the carts by him at Buffalo. 3. E. T. Evans testified that he was a forwarding merchant at Buffalo; that he received all consignments for W. W. Arnold at Buffalo, and carried them out, the latter being in ill health, and witness's firm acting for him; that on the 15th of October, witness's firm received the packages in question, and forwarded them by the Belle City Line to Racine, Wis., and that it was the universal custom at Buffalo, when property came under such a bill of lading as that above set forth, for the canal boat to deliver the property to the consignee to whose care the property is addressed at Buffalo. 4. Robert Mitchell testified that he was check clerk in Evans' warehouse at Buffalo, and that he received and re-shipped the packages in question on the 15th of October; and his testimony tended to show that the packages were at that time in apparent good order, and there was nothing to indicate that their contents had been disturbed. 5. F. H. Hutchins testified that his warehouse at Chittenango was on the line of the Erie canal, 150 or 200 miles from Buffalo; that he received the packages in question " in the capacity of a warehouseman, and for the purpose of shipping them to Delavan;" that he marked the packages himself and brought them with his team from *Parmelee's* house to his warehouse; that when he delivered them to the canal boat they were in the same condition as when he received them; that he never saw their contents; that the figures " $3.04 " on the bill of lading issued by him was the canal freight from Chittenango to Buffalo. " The property was in my possession as a forwarder, to be forwarded as best I could. My contract with the canal boat was to carry the property to Buffalo at fifteen cents per hundred, and deliver to Arnold; and then a new contract would be made by Arnold for its further shipment from Buffalo. I had Arnold's circular as to prices of lake freights from

Buffalo westward, and showed it to *Parmelee*, and told him what I thought it would cost to go through. This bill of lading was written and issued to carry out, in part, this shipment of goods on the understanding I have stated. I think I told *Parmelee* that the freight by canal and lake to a lake port in Wisconsin would be about seventy-five cents a hundred."

Plaintiff, being re-called to rebut the evidence for the defense, was asked what the price of the transportation was put in the bill of lading for; and, an objection to the question being overruled, he answered : " It was to be seventy-five cents a hundred; ' and now,' says I, ' you put this right in the receipt, so I can show it when I get to Delavan.' " The witness further testified that Hutchins "offered to receive the money clear through," but witness declined to pay clear through, remarking that " the goods were good for the freight, any way." *Question.* " State whether Mr. Hutchins represented himself as the agent of this transportation company ?" *Answer:* " Yes, sir; he said, ' I can ship by a good responsible line; whatever I contract will be carried out.' He said he was agent for all the responsible companies, and would ship them in good condition. I can't swear that he was agent for that company." *Question* by the court: " What do you know about his acts in shipping goods by this company and receiving goods for them ?" *Answer:* " He does it every day more or less. The goods that came to Chittenango all came in that way, and he received them from the company." On cross-examination the witness stated that he did not personally know whether Hutchins was the agent of the defendant company or not, but he knew that " the forwarding merchants all recognized him as such," and he supposed him to be such agent because he contracted in the manner he did; that Hutchins did not state what line of canal boats he would ship the goods by, but only said it would be " a good, responsible line;" that the name of

W. W. Arnold was put on the packages with his (witness's) knowledge and consent; and that Hutchins stated to him that Arnold would see to the shipment of the goods westward from Buffalo.

The court instructed the jury that they were to determine from the evidence whether defendant agreed to ship plaintiff's goods to Delavan, or only to Buffalo; that their next inquiry would be, whether the goods described in the complaint were lost while in defendant's custody, or before their delivery at the place where defendant agreed to deliver them; and that if they were so lost, defendant was liable for their value.

Verdict for the plaintiff; and defendant appealed from a judgment on the verdict.

*Emmons & Van Dyke*, for appellant, contended that there was no legal proof whatever tending to connect the defendant with any contract except one to carry the goods to Buffalo, and deliver to W. W. Arnold. Before a party can be made responsible for the acts and declarations of another person, there must be legal evidence of that other person's authority to act for such party. *U. S. v. Boyd*, 5 How. (U. S.) 29, 51; Dunlap's Paley, 309, 310. Statements made by one person as agent for another are not admissible in evidence against the principal until the relation has first been established. *Hough v. Doyle*, 4 Rawle, 294; *Langhorn v. Allnutt*, 4 Taunt. 511; 1 Phill. Ev. (5th Am. Ed.) 516; *Scott v. Crane*, 1 Conn. 255; *Courteen v. Touse*, 1 Camp. 43.

*Page & Montague*, for respondent, contended that there was evidence to support the finding of the jury that Hutchins was defendant's agent, and no evidence to contradict it; and also the finding that defendant, by Hutchins, contracted to carry the goods to Delavan.

PAINE, J. We do not think there was sufficient evidence to justify the court below in submitting to the jury the question whether the defendant made a through

contract to transport the goods to Delavan, Wisconsin. The receipt given by Hutchins did not purport to be a contract of transportation. It stated that the property was received in store; and whatever contract it imported was as forwarder, not as carrier. The only thing in it tending to the contrary conclusion is the statement of the price of freight from Buffalo. But that appears to be nothing more than a memorandum, and may well have been added as such merely, as Hutchins testifies that it was, he having at the time a circular showing the rates of freight from Buffalo.

And the fact that it states only the freight from Buffalo, indicates very strongly that it was understood that the transportation to Buffalo might be by a wholly separate and distinct contract from that from Buffalo to Wisconsin. It does not purport to be any contract by Hutchins as agent of the defendant. And if it should be held to amount to a contract by him, as to the amount of the freight beyond Buffalo, it is quite as consistent with the fact that it was made by him as agent of the line which actually transported the property from that city, as it is that it was made as agent of the defendant. And the evidence is just as strong that he was the agent of all responsible lines as of the defendant. There is no sufficient proof to justify a finding that he was agent of the defendant, or contracted as such. All that the plaintiff knew about it was, that he shipped goods by this company, and received goods for them. But every forwarder does that as to every company by whom he forwards, or from whom he receives goods. But that is not sufficient evidence to justify an inference of authority to contract for them as carriers.

The defendant was a company engaged in the business of transportation by canal to Buffalo. The only contract with which it seems to have been sufficiently connected, was the shipping receipt given by the master of the canal boat to Hutchins. On the ship-

ping bill then made out, the price of the freight to Buffalo, amounting to $3.04, was all that was marked.

The shipping receipt, after reciting that the boxes were marked " F. M. Parmelee, Delavan, Wisconsin, care W. W. Arnold, Buffalo," provided that they were " to be delivered in like good order, without delay, *as addressed.*" This is one of that class of contracts which cannot be properly understood except in the light of the surrounding circumstances. It might, under some circumstances, be held to be a contract to deliver at Delavan. Under others it would be a contract only to deliver at Buffalo. Upon the facts here presented,—that the receipt was given by a canal boat; that Buffalo was the terminus of the canal; that the property was addressed to an intermediate consignee at Buffalo; and that the amount of freight fixed in the shipping bill, included only the freight to Buffalo—we think it was the duty of the court to say that the undertaking in this receipt, to deliver " as addressed," had reference only to the address at Buffalo, and that it consequently was not a through contract.

On the whole, there does not seem any sufficient proof that Hutchins was authorized to contract as carrier for the defendant, or, if so authorized, that he did make any through contract in that capacity, to warrant the court in submitting these questions to the jury.

If the property was lost before it arrived in Buffalo, the defendant would of course have been liable. But as the case was submitted to the jury upon the theory that they might find a through contract, and hold the defendant liable wherever the loss may have occurred, the judgment must be reversed, and a new trial had.

*By the Court.*—Judgment reversed, and a new trial awarded.