Associate Justices AVERY and CLARK dissenting, arguendo.
The issues submitted to the jury, and the responses, were as follows:
1. Was Joseph Smith killed by the negligence of the defendant? Answer: "Yes."
2. Did the said Joseph Smith, by his own negligence, (730) contribute to his own death? Answer: "Yes."
3. Could the defendant, by the exercise of reasonable care and prudence, have avoided the injury? Answer: "Yes."
4. What damage, if any, is the plaintiff administratrix entitled to recover? Answer: "$1,000."
It was in evidence that the engineer blew the locomotive whistle for the crossing, and in a few minutes blew it again, the brakes were applied and the train stopped. The train, which was a long one, was running 30 to 40 miles an hour, according to one witness, and 20 or 30 according to another. There were, besides the locomotive, ten or twelve box and flat cars in front, then the second-class car, and then a first-class car. When the train stopped, the remains of the deceased were under or opposite to the car in front of the second-class car. There were no air-brakes, but the brakes in use were good ones.
It was in evidence that deceased was addicted to the use of liquor, *Page 447 
and that he had been drunk for several days prior to his death, one witness saying that two hours before his death deceased was "crazy drunk." Another man was found lying drunk a few feet from deceased. An engineer, by keeping proper lookout on the track, might have seen a man's head on the track 200 or 300 yards distant.
The engineer testified for the defendant that upon seeing an object on the track at a distance of about 150 yards he blew distress whistle to make it get off, blew for brakes, reversed the engine and used steam-brake on engine, continuing to blow the distress whistle; that he discovered it to be a man, but could not stop the train before it ran over deceased. Whistles were blown, but the man did not move. As soon as he saw the man did not move, the engineer blew whistle and applied brakes, and the train slackened. (731)
On cross-examination, the engineer said: "It was about 150 yards from the crossing to where deceased was killed. I blew for first crossing 150 yards back; saw object as I was going over the last crossing. I felt the jar of the brakes. Had two brakemen and fourteen cars in all. There were no brakes on the flat cars; was running about 20 miles an hour. When train ran over deceased it was running about 4 miles an hour. I could not stop the train at speed I was running in less than 150 yards. If I had had air-brakes I could have stopped. Ordinarily, trains like the one I was in charge of have hand-brakes."
Other witnesses testified to the sharp and quick blowing of the distress signals and that the train was stopped quickly by the brakes.
His Honor instructed the jury, among other things, as follows:
"It is the duty of the engineer or fireman, in running the train, to keep a lookout in front of the train to see objects on the track in order to avoid accidents, and if they fail to do so, this failure is negligence on the part of the company, and if an injury results from a failure to keep this lookout the company will be liable; and if you find that the plaintiff's intestate was run over by the train of the defendant and killed because of a failure of the officers in charge of and running the train to keep this lookout and see deceased lying on the track, it would be negligence, and you will answer the first issue `Yes.'
"If you find the facts to be that, by reasonable diligence in keeping a lookout, the engineer could have seen the deceased lying on the track in time to have stopped the train before it ran over the deceased and he did not stop it, it would be negligence, and you will (732) answer the first issue `Yes.'
"The fact that the defendant did not have air-brakes on the train is not negligence.
"It was the duty of the defendant to have sufficient brakes and appliances to have stopped the train in emergencies of this character in a *Page 448 
reasonable distance, and if you find that the brakes were not sufficient for that purpose it would be negligence, and if the deceased came to his death in consequence of this fact, you will answer the first issue `Yes.'
"It is insisted by the defendant that the train was properly equipped and manned for trains of the character of this one, being a mixed train of passenger and freight cars. The plaintiff insists that two brakemen to fourteen cars was insufficient. This is a question for you. If you find from all the evidence in this case that two brakemen and the steam-brake on the engine were sufficient to properly run the train and control it, then the failure to have more is not negligence; but if you find from all the circumstances growing out of this evidence, as you find it to be, that two brakemen, the steam-brake on engine and the number of brakes you find were on this train were insufficient to properly run and control it, then the failure to have a sufficient number would be negligence in the company.
"If you find that the train could have been stopped with the appliances with which it was equipped, after the deceased could by reasonable diligence have been seen, and it was not stopped, but ran over deceased and killed him, it would be negligence, and you will find the first issue `Yes.'
"The question for you as to the outlook is not whether the engineerdid see the deceased lying on the track, but whether he could by the exercise of reasonable diligence have seen him; and if he could (733) by reasonable diligence have seen him in time to stop the train, but did not in fact see him in time to stop it, it would be negligence.
"If you find the engineer kept a lookout and saw the deceased lying on the track as soon as he could have seen him, and immediately used all the appliances he could control in order to stop the train, and could not do so, it would not be negligence, and you will answer the first issue `No.'
"If you answer the first issue `No,' you need not answer the others, for unless the deceased came to his death by the negligence of the defendant the plaintiff cannot recover.
"If you answer the first issue `Yes.' I instruct you to answer the second issue `Yes' if you believe the evidence in this case.
"If you answer the first and second issue `Yes,' then come to the third. On this issue the same law is applicable that I have laid down to you as applicable to the first, and the facts that would constitute negligence under the first issue would constitute negligence under the third issue; so that, if the facts proven satisfy you that the defendant was guilty of negligence, and you answer the first issue `Yes,' it will be your duty to answer the third issue `Yes.' *Page 449 
"If you answer this issue `No,' then you need not consider the question of damages, because the plaintiff would not be entitled to recover damages; but if you answer the first three issues `Yes,' then you will consider the fourth issue; for although the deceased may have contributed to his own death by his own negligence, still if the defendant could by reasonable care have stopped its train and not run over and killed him, the plaintiff would still be entitled to recover."
The defendant excepted to the charge delivered by the court, and assigned the following errors:
1. The charge assumes that the defendant failed to keep proper lookout on its track to avoid the accident, and did not properly leave the question to the jury.
2. In the instructions on the third issue, that the same law is applicable to it as the first, and the same facts that would (734) constitute negligence on the first issue would constitute negligence on the third issue, so that if the facts proven satisfy you that the defendant was guilty of negligence, and you answer the first issue "Yes," it will be your duty to answer the third issue "Yes."
There was judgment on the verdict for plaintiff, and defendant appealed.
1. We are of the opinion that there should be a new trial upon the charge of his Honor on the third issue. This issue was intended to present to the jury the principle of Davies v. Mann, 10 M. W., 546, and the jury were instructed that the same law and facts which would constitute negligence under the first issue would be applicable to the third issue. The evidence upon the first issue tended to prove negligence on the part of the defendant by reason of its failure to keep a proper lookout in order to discover the deceased in time to avoid the accident, and also because of its failure to properly equip the train by providing sufficient brakes and brakemen. Now, as the doctrine ofDavies v. Mann, is based upon some omission of duty occurring after the negligence of the deceased — Gunter v. Wicker, 85 N.C. 310 — (which negligence was found by the court on the second issue), it is plain that there was error in blending these two essentially different elements of negligence — the one existing prior and the other occurring subsequently to the negligence of the deceased — and applying them indiscriminately to the third issue. We cannot know upon what phase of (735) the testimony the jury acted in determining the question of negligence upon the first issue, and we have just as much right to assume *Page 450 
that, under the charge of the court, they found that the negligence consisted simply in the failure to properly equip the train as that they predicated it upon the alleged failure to observe ordinary care in keeping a reasonable lookout, etc. Under the first view, there can be no doubt that the finding upon the second issue would have barred a recovery; for if the engineer discovered the deceased as soon as he could have done so by keeping a proper lookout, and immediately applied all the means within his control to avoid the collision, and his failure to do so was by reason of the improper equipment of the train (an omission of duty which might have existed for weeks or months), then the negligence of the defendant would be no more proximate than that of the deceased, and there would be no ground whatever for the operation of the principle of Davies v. Mann. If this be not so, and the principle of that case is to be extended to negligence occurring both prior as well as that which is subsequent to the negligence of the deceased, it is perfectly useless to pretend that the doctrine of contributory negligence as to cases of this character has any place in the jurisprudence of this State.
This inadvertence on the part of his Honor (and such alone do we consider it) affords the defendant a clear ground of new trial, and this would be equally true if, as suggested, the third issue had been omitted and the same instruction had been given on the first.
2. We are also of the opinion that there was error in ignoring that universally established principle in the law of contributory negligence which imposes upon one who has voluntarily disabled himself by reason of intoxication the same degree of care and prudence which is required of a sober person. This is so well established that it would seem (736) unnecessary to cite authority in its support, but as it appears to be questioned we will reproduce a few extracts from some of the text-books, which are substantially repeated by every writer upon the subject. Mr. Wood, in his work on Railways (Vol. II, sec. 1457), after stating that one cannot voluntarily incapacitate himself from ability to exercise ordinary care, and then set up such incapacity as an excuse for his negligence, remarks: "The rule, therefore, is that the same care is required of a person when he is intoxicated as when he is sober, though if the defendant is aware of his state before the injury, it is bound to exercise greater care to avoid inflicting any injury upon him." In Patterson's Railway Accident Law, 74, it is said: "The fact that the person injured was intoxicated at the time of the injury will not relieve him from the legal consequences of his contributory negligence." In Bishop's Noncontract Law, 513, it is said: "Contributory negligence is the product of a general ill condition of the mind and not of a specific intent. Therefore, on principle, drunkenness does not excuse it; and so, also, are the authorities." In 1 Thompson on Neg. (430) the author *Page 451 
remarks: "Nor will the self-inflicted disability of drunkenness excuse the wayfarer from the exercise of such care as is due from a sober man." In 1 Shearman Redfield Neg., 93, it is said in effect that if the intoxication is such that it prevented the injured person from taking ordinary care to avoid the injury, he cannot recover. See, also, Pearce on Railroads, 295; Whitaker Negligence, 403, note; 4 A. E., 79. In Beach Cont. Negligence (403) it is said: "Drunkenness is a wholly self-imposed disability, and in consequence is not to be regarded with that kindness and indulgence which we instinctively concede to blindness, or deafness, or any other physical infirmity. . . . Disabilities, moreover, of any kind, are to be a shield and never a sword. It (737) would be a strange rule of law that regarded a certain course of conduct negligent and blameworthy upon the part of a sober man, but that held the same conduct on the part of the same man, when intoxicated, venial and excusable. Drunkenness will never excuse one for a failure to exercise the measure of care and prudence which is due from a sober man under the same circumstances. Men must be content, especially when they are trespassers, to enjoy the pleasures of intoxicationcum periculis. When they make themselves drunk, and in that helpless condition wander upon the premises of sober men and sustain an injury, they will not be heard to plead their intoxication as an answer to the charge of negligence; and the courts consistently hold that such intoxicated trespassers (the notes show that the author is speaking of railroad accidents) have no standing in any forum where justice is impartially administered. These authorities, supported by a multitude of cases cited in the notes to the various text-books, establish beyond all controversy that the deceased, under the circumstances of this case (that is, not having been discovered by the engineer in time to avoid injury) is to be treated, up to the moment of the collision, as a sober man, and that his helpless condition is not to be assimilated to those cases where the disability has not been self-imposed and where the helpless condition is treated as a remote cause of the injury by reason of previous negligence or the visitation of Providence. Of course, if the engineer knew, or had reason to know, of his helpless condition in time to stop the train and avoid the injury, and failed to do so, he would be guilty of such reckless conduct as would subject him to the punishment of the criminal law, as well as impose a civil liability upon the railroad company. This principle, as we have stated, is peculiar to the self-imposed disability of intoxication, and is as firmly fixed in the law of (738) negligence as it is, as a general rule, in the criminal law of the land. That this is so is evident from the fact that after the most industrious research there cannot, it seems, be found in the entire annals of English or American jurisprudence a single decision at common law (nor have *Page 452 
we seen any under a statute) in which a recovery has been permitted for injuries inflicted along the line of the road, under the circumstances of this case. Even in Missouri and Texas, where perhaps the most advanced doctrine obtains, it has been decided that the action cannot be maintained unless the engineer knew or had reason to know of the exposed and unconscious condition of the deceased. Yarnall v. R. R.,75 Mo., 575; Houston v. Sympkins, 54 Tex. 615[54 Tex. 615]. See, also, numerous cases cited in the notes to Kean v. R. R., 19 Am. and Eng. R. R. Cases, 321. In the Texas case it will be noted that the court distinctly held that it was the duty of the engineer to keep a lookout to avoid injury even to trespassers, yet a new trial was granted on the ground that it was not left to the jury to determine whether the injured party was intoxicated or was suffering from a providential visitation — "a fit." If his lying on the track, insensible to danger, was due to the former and not to the latter cause, it was declared that the plaintiff could not recover. It may be further observed that this case is cited as an authority in Troy v. R. R., 99 N.C. 298, and it is remarkable that even in the two States where it is said the doctrine of comparative negligence obtains, this action could not be maintained. R. R.v. Cragin, 71 Ill. 177; R. R., v. Bell, 70 Ill. 102;R. R. v. Riley, 47 Ill. 514; R. R. v.Hankerson, 61 Ga. 114. We are unable to understand how, upon principle, the case of one who is asleep on the track can be assimilated, as argued, to that of the self-imposed disability of intoxication, (739) which, as we have seen by all of the authorities, stands upon its own peculiar ground. Being on the track is not itself negligence (Troy's case), and if such a person is unexpectedly overcome by sleep his disability cannot be said to have been voluntary and self-imposed. Neither are we able to see how the case of a deaf-mute walking on the track can be likened unto that of a person who is lying there stupefied by strong drink. A high degree of care is required of one who is deaf and who places himself in a position of known danger; still, if the engineer can by reasonable diligence discover him on the track, and also his insensibility to danger, the disability being involuntary, he is entitled to recover.
Nor can we perceive any similarity between the intoxicated man and a cow that has strayed upon the track; the cow, of course, not being the author of its insensibility to danger, and the owner really guilty, as held by this Court, of no negligence whatever in turning his cattle out to graze.
The principle of which we are speaking has never been denied by this Court as a distinct ground of decision, though the case of a drunken man was used in Dean v. R. R., 107 N.C. 686, as one of the illustrations *Page 453 
of certain very important principles in the law of negligence, which it will be seen hereafter we fully approve.
The point did not arise in that case, as it was not found or admitted that the deceased was intoxicated, and the ruling below was simply to the effect that upon the whole testimony the defendant owed no duty to look out and discover trespassers upon the track, and therefore was not guilty of negligence. The ruling of his Honor was regardless of the fact whether the deceased was drunk or sober, and it was necessary that this Court should declare the duty of railroad companies as to persons on the track at places other than crossings, and also to (740) discuss the doctrine of contributory negligence in its relation to the principle commonly called the rule in Davies v. Mann. The language used in the opinion is as follows: "If the engineer discover, or by reasonable watchfulness may discover, a person lying upon the track asleep or drunk, or see a human being who is known by him to be insane or otherwise insensible to danger or unable to avoid it, upon the track in his front, it is his duty to resolve all doubts in favor of the preservation of life, and immediately use every available means short of imperiling the lives of passengers on his train to stop it." From this language it might be inferred that the duty of the engineer begins only upon the discovery of the person in danger; for until he does discover him the duty of resolving all doubts in favor of his preservation from danger cannot very reasonably arise. Taken, however, in connection with other parts of the opinion and the declaration of the Court in subsequent cases, it cannot be doubted that it was intended to declare the duty of keeping a proper lookout for all persons who may be on the track. The declaration, however, of a duty and the effect of intoxication in contributory negligence are very different things, and the latter question was, for the reasons above mentioned, not presented to the Court. It is true that from the opinion it might be inferred that intoxication, if it had been found as a fact, would have excused the negligence of the deceased, but, as we have said, this particular point was not decided, nor do the authorities cited in the opinion support this view. Let us examine these cases:
In R. R. v. Smith, 52 Tex. 179[52 Tex. 179], the injury was inflicted upon a man who was walking upon the railroad track and was negligent. He was held, under the circumstances, to be guilty of contributory negligence, and it is to be noted that there (741) was evidence tending to show that he was intoxicated.
In R. R. v. Miller, 26 Mich. 279, the action was brought for injuries received by the plaintiff in a collision between a locomotive and the wagon in which the plaintiff was riding. There was nothing in the case about intoxication, but in the course of his learned opinion Judge *Page 454 Christiancy, in discussing the general subject of negligence, remarked that if the engineer "sees" a person in peril on the track whom he has reason to believe to be badly intoxicated or otherwise insensible to danger, he must use all the means in his power to stop the train and avoid a collision.
In R. R. v. St. John, 5 Sneed, 504, the accident complained of was to a child eight years of age; and in Meeks v. R. R., 56 Cal. 513, the accident was to a child six or seven years of age. In neither of these cases was the effect of intoxication discussed, and they were evidently cited for the purpose of sustaining the rule imposing the duty upon the engineer of keeping a lookout for persons along the line of the track, and upon that question they are in point.
To the same effect is the much-cited case of Isabel v. R. R.,27 Conn. 393, but as bearing upon the particular question under consideration it may be noted that the action was brought for the killing of cattle straying upon the track, and that the duty which the law imposes upon an intoxicated person was in no way involved in the decision. The following language, however, appears in the discussion of the general subject: "Or, an intoxicated man is lying in the traveled part of the highway, helpless, if not unconscious: must I not use care to avoid him? May I say that he has no right to encumber the highway, and therefore carelessly continue my progress, regardless of consequences? Or, if such a man has taken refuge in a field of grass or a hedge of bushes, may the owner of a field, knowing the fact, continue to mow (742)on or fell trees, as if it were not so? Or, if the intoxicated man has entered a private lane or byway and will be run over if the owner does not stop his team which is passing through it, must he not stop them?" We have quoted the entire paragraph, so that it can be readily seen that this dictum (and it is nothing more) really means what we all concede — that if such an intoxicated person is discovered it is a duty, dictated by humanity as well as the law, to avoid inflicting an injury upon him. If this is not so, what meaning is to be attached to the words, "carelessly continue my progress," "knowing the fact," and "does not stop them"?
When Mr. Wood (Vol. II, 1464) speaks of the duty which is due to persons lying on the track in connection with a child or an animal, he very clearly did not intend to say that when a drunken man is not discovered he is to be absolved from the consequences of his own negligence, as the only case he refers to of persons lying on the track is Meeks v. R. R., supra, where a child lying on the track was run over and injured. That he did not mean that a drunken man would be excused from exercising the same care that is required of a sober man is evident from his explicit statement of the contrary doctrine, which we have *Page 455 
heretofore quoted, and which is sustained by all of the authorities. This is also perfectly manifest from the fact that on the very next page he quotes with approval that part of the opinion in R. R. v. Miller, supra, which contains the language of Judge Christiancy to which we have referred, and which indicates that the railroad company is only liable for the failure of duty after the discovery of the drunken man. The author says: "And this we believe is an accurate statement of the duty of railway companies under the circumstances referred to."
It is manifest from this examination that these cases do not sustain the proposition that an intoxicated person is absolved (743) from the duty of exercising ordinary care, and it is but proper to say that they were probably cited for the purpose of sustaining the general principles laid down in the extract which we have quoted. Having shown, we think, conclusively, not merely by the weight, but by the entire course of judicial opinion, that the self-imposed disability of intoxication affords no more excuse in the law of negligence than it does in the criminal law, we cannot understand has we could be justified in the abrogation of this principle which has stood for centuries simply by reason of what may be implied from the language of an opinion in a case that did not distinctly raise the question. This, it seems to us, would not be following the doctrine of stare decisis, and the argument that a court can arbitrarily reject a fundamental principle of law by calling it a fiction is, we think, wholly inadmissible. If we can do this, there is no reason why the same principle may not be rejected as a fiction in the criminal law; and, indeed, we do not see why we could not dispose of any other well-grounded rule of law in the like summary manner. The supposed analogy with the principle of equity which relieves a wholly intoxicated person against the consequences of his contracts cannot be supported. Equity shields him in such cases when he has been imposed upon by reason of such incapacity, but neither equity nor law ever converts intoxication into a sword by means of which a drunken man can make a profit out of his self-imposed disability, when a sober man under the same circumstances would be entitled to no relief. It would, as Mr. Beach says, be a strange law that would enable a drunken man to recover when under the same circumstances a sober man would be denied all redress; and there certainly can be no more inhumanity in denying a recovery to one who, by an act done in (744) his intoxicated condition, might probably contribute to the wrecking of a train and the destruction of the lives of passengers, than to hang a man for a murder committed while wholly unconscious of his act by reason of the influence of strong drink. The law does not treat such unfortunate persons who may be on the track as outlaws. On the contrary, this Court and several others have declared it to be the duty of *Page 456 
the engineer to keep a vigilant lookout for them and all other persons, but when he fails to discover them by the omission of ordinary care — and this is the measure of his duty (Dean v. R. R., supra; McAdoo v. R. R., 105 N.C.) — there would seem to be no injustice in denying a recovery to one who has voluntarily stupefied his senses so as to be unable to provide for his own safety. The engineer is running a train over his own right of way, and by an inadvertence which amounts simply to the failure to use ordinary care fails to discover a person who really has no right to be on the track and who he cannot reasonably anticipate will make it a place of drunken repose. The engineer, when he discovers the man, uses every means in his power to avoid the injury. The man, had he been sober, could easily have escaped, but by reason of the self-imposed disability of intoxication makes no effort to do so. Can there be anything wrong in refusing to cast upon the defendant the whole responsibility of the collision and making it pay for an accident which would not have happened had the deceased been sober, and for which, had he been sober, he could not have maintained an action? The law is just, as well as humane, and denies a recovery under such circumstances. Such has always been the law, both in England and America; it has been approved by such great jurists as Ruffin, Nash,Pearson, and their distinguished successors, and we feel that we are treading upon safe ground when we follow in their footsteps.
If the Legislature sees fit to change the law in this respect, it (745) has the power to do so, but we do not think that so radical a change in the law of negligence should be wrought by what we cannot help thinking would be "judicial legislation" of the most pronounced character.
As we have already intimated, the fact that the elementary principle referred to seems to be seriously disputed is the only reason we have said so much in its support, as we believe it to be established beyond all question by the consensus of judicial decision as well as the opinion of all of the authors upon the subject. If, then, the same degree of care is required of the deceased "as is required of a sober man under the same circumstances," it is plain that his negligence was concurrent with that of the engineer, and he was therefore guilty of contributory negligence.McAdoo v. R. R., supra, and the authorities cited. Indeed, as we shall hereafter see, his negligence, operating as it did up to the moment of the collision and after the decisive negligence of the engineer, was really subsequent negligence, and goes far beyond what is sufficient to bar a recovery. Had the deceased been looking and listening, as he was required to do, he would have had ample time to have escaped from his peril after the engineer had passed the point when his efforts would *Page 457 
have been unavailing to save him. Under this view, he being in contemplation of the law able to avoid the consequences of the prior negligence of the defendant, it would seem that if the train had been injured by the obstruction his negligence would have been the proximate cause of the accident, and the defendant, and not the deceased, would have been entitled to recover. A sober man, as we have seen very clearly, could not have recovered, and is a premium to be offered to negligence caused by the self-imposed disability of drunkenness, which prevents one from using ordinary care by looking and listening for the approach of trains which he is bound to know the defendant has a (746) right to run, and will run, over its own property in the pursuit of its legitimate business? In this case there is a total absence of testimony tending to show that the conduct of the engineer was wanton or wilful, and his testimony to the effect that he sounded the alarm and applied the brakes and used all other means under his control to avoid the accident, as soon as he discovered the deceased lying on the track, is wholly uncontradicted. The action, then, being founded upon the failure to use ordinary care, is subject, of course, to the defense of contributory negligence, and we cannot conceive of a plainer case than the one now before us.
We feel very sure that his Honor's failure to apply the principle which we have been discussing entitles the defendant to a new trial.
3. While the foregoing considerations are, in our opinion, sufficient to dispose of this appeal, we deem it our duty, in view of the argument of counsel, to express our approval of certain general principles laid down in Deans's case, supra, and also our views as to how they should be applied. Leaving, then, the facts of this particular case behind us, we will state that one of the principles referred to is that which imposes upon the engineer of a railroad train the duty of keeping a vigilant lookout on the track in order to discover and avoid any obstructions that may be encountered thereon. This duty is due to the passengers, and, when consistent with the necessary attention of the engineer and other employees on the engine to its safe and proper management, the duty is likewise due to the owner of cattle running at large, to the owner of other property which under certain circumstances may be on the track, and also, as a general rule, to persons who may be on the same at places other than crossing. When, under the particular circumstances of a case, such property or persons may by the exercise of ordinary (747) care be discovered in time to avoid a collision, the failure to exercise such ordinary care is negligence, and the plaintiff will be entitled to recover unless he has been guilty of contributory negligence. Of course, where a person is discovered and is apparently not unconscious of danger, it is to be presumed that he will observe ordinary caution, *Page 458 
and the engineer is not required to stop the train. Although this principle, as applied to persons on the track, does not generally prevail, there seems to be a growing disposition on the part of the courts to recognize it as a common-law duty, and in Georgia and Tennessee it has been imposed by statute. In Tennessee, however, it was said by Lurton,C. J., (Patton v. R. R., 89 Tenn. 370; see. also, R. R., v. St. John,supra), that such is the law, without reference to the statute, and he quotes with approval the language of Mr. Wood, who says "that a railroad company is bound to keep a reasonable lookout for trespassers upon its track, and is bound to exercise such care as the circumstances require to prevent injury." 2 Wood Railroads, 1267. This language is also quoted with approval by the Supreme Court of West Virginia, and a recovery was sustained upon the same principle for injuries to a child trespassing upon the track. Gunn v. R. R., 14 S.E. 465. To the same effect is Meeks v. R. R., supra, and other cases. This ruling on our part is supported by the plain intimation, if not, indeed, the decision, of this Court in Troy v. R. R., supra, in which it is said that a person walking upon a railroad track is not guilty of contributory negligence per se, nor does such a "technical" trespass relieve the railroad company of the duty of exercising ordinary care to avoid the infliction of injury, provided such person, after he gets on the track, does nothing "positive or negative to contribute to the immediate injury." The Court adopts the principle laid down in the leading case of Houston v. Sympkins, (748) supra, and it may be well to reproduce an extract from the opinion in that case. The Court said: "In our opinion, there is a distinction between the duty devolving on the owners of land on which there is a dangerous excavation and that devolving on a corporation invested with the extraordinary power of traversing the country with huge cars, whose progress is everywhere attended with danger. They who place such dangerous machines in motion should, we think, be required to take precautions against their injuring any one who may happen to be in their pathway. `The care in conducting any business should be proportionate to its dangerous nature.' German v. R. R., 26 Wis. 448. The extent of the precautions required of a railroad company depends on all the circumstances. The regulations of railroads exact watchfulness of the engineers, and this rule should operate for the benefit of the public as well as the company. Authorities are not lacking in support of the position that a `reasonable lookout,' varying according to the danger and all the surrounding circumstances, is a duty always devolving on those in charge of a train in motion. R. R., v. State, 36 Md. 366; Harland v. R. R.,65 Mo., 22; Hicks v. R. R., 64 Mo., 430. The duty of watchfulness has often been enforced against railroads in cases of injuries to cattle trespassing on their tracks, and that, too, in *Page 459 
the absence of any statutory provision or in cases outside of the statute. We prefer that line of decisions holding railroads bound to exercise their dangerous business with due care to avoid injury to others as correct in principle and sound in policy, and as protecting even a trespasser who is not guilty of contributory negligence." These principles, when applied with a proper regard to the defense of contributory negligence, commend themselves to our judgment as just as they are (749) humane, and they are especially applicable to railroads operating within our State, where, as a matter of common knowledge, the use of their tracks by pedestrians is tacitly acquiesced in. We can see no hardship in exacting this duty of engineers and holding their principals responsible when they fail to exercise due care in discovering and avoiding injuries to helpless persons, between crossings, who are in plain view upon their tracks; and this is really the duty imposed upon them in such cases. As we have stated, this duty has been established by several decisions of this Court, and at the present term we enforced it in the case of an injury to a child of tender years who could by the exercise of ordinary care have been discovered by the engineer. Bottoms v. R. R., ante, 699. We see no reason to reverse our former rulings upon this important subject simply because in some of the other States a contrary doctrine is held. We believe that they are founded upon principle as well as respectable authority, and for these reasons, as well as a due regard to the doctrine of stare decisis, we should adhere to the principles therein enunciated.
4. We have thus dwelt upon the existence and nature of this duty because it is impossible to discuss the doctrine of contributory negligence, even to a limited extent, unless we have a clear conception of this constituent element, as well as of other terms and definitions relating to the subject. Indeed, it may be safely remarked that no science is more dependent upon the accuracy of its terms and definitions than that of the law. Looseness of language and dicta in judicial opinions, either silently acquiesced in or perpetuated by inadvertent repetition, often insidiously exert their influence until they result in confusing the application of the law, or themselves become crystallized into a kind of authority which the courts, without reference to true principle, (750) are constrained to follow. These observations are particularly applicable to the doctrine of contributory negligence, and especially in its relation to what is generally called the rule of Davies v. Mann. All along the highway of judicial decision we find it so strewn with the wrecks of overruled cases, exploded dicta and condemned or qualified expressions that we are inclined to sympathize with the despairing remarks of JudgeThompson that "The whole subject of contributory negligence remains in a state of great confusion and *Page 460 
uncertainty." Vol. II, Neg., sec. 7. Mr. Beach, Mr. Patterson, and some other writers attribute much of this obscurity to improper definitions of the rule in Davies v. Mann, and we think with them that it is simply a means of determining whether the plaintiff's negligence is a remote or a proximate cause of the injury. Before the introduction of the rule, any negligence on the part of the plaintiff which in any degree contributed to the accident was judicially treated as a proximate cause, and constituted contributory negligence, which barred recovery. Dowell v.Nav. Co., 5 El. Bl., 194. Several reasons have been assigned in support of this principle, one of which is that a court of law, unlike a court of admiralty, has "no scales to determine in such cases whose wrongdoing weighed most in the compound that occasioned the mischief"; and, therefore, if the plaintiff were allowed to recover, "it might be that he would obtain from the other party compensation for his own misconduct." 2 Thompson Neg., 1146-1154. This was considered a harsh rule, as it left the plaintiff to bear all the damages, although he may have been but remotely, and consequently but slightly, in fault. The doctrine, however, was qualified by the ruling in Davies v. Mann, and it was determined that, although the plaintiff was guilty of a want (751) of ordinary care in contributing to the injury, yet this would not prevent him from maintaining an action if the defendant might have avoided the injury by the exercise of ordinary care on his part. Much confusion, as we have seen, has resulted in the application of this principle, and it has been claimed to be authority for the doctrine of comparative negligence, and it has also been criticised as practically abolishing the doctrine of contributory negligence altogether. A very reasonable explanation of it is made by Mr. Patterson, however, who says: "The rule has been misunderstood and misapplied. It means only that that negligence upon the part of the plaintiff which bars his recovery from the defendant must have been a proximate cause of the injury, and that it is not a proximate, but only a remote, cause of the injury, when the defendant, notwithstanding the plaintiff's negligence, might by the exercise of ordinary care and skill have avoided the injury. Thus stated, the rule is consistent with the theory upon which the doctrine of contributory negligence is based, and furnishes no support for that of comparative negligence." Patterson Railway Accident Law, 51.
Mr. Beach expresses the same view, and adds that "The attempts of the judges to ring a new change or to find some novel and original phrase in which to express the rule that whenever the negligence of a plaintiff proximately contributes to cause the injury for which he seeks to recover damages he has no cause of action, has thrown the law into confusion." Contributory Negligence, p. 33; Pollock Torts, 295; Bishop Noncontract Law, 459; 2 Wood, 1447; Wharton Neg., 323; 4 A. E., *Page 461 
1, 19, 27, notes. It must also be observed that shortly after the decision of Davies v. Mann, Lord Campbell, in 5 El. Bl., 195, understood the doctrine to be the same as stated above. These views have been distinctly adopted by this Court in several cases and are well expressed in Farmer v. R. R., 88 N.C. 564, in which Mr. Justice (752)Ashe states that whether the plaintiff was guilty of contributory negligence depends upon whether his act "was a proximate or a remote cause. If the act is directly connected, so as to be concurrent, with that of the defendant, then his negligence is proximate and will bar his recovery, but where the negligent act of the plaintiff precedes in point of time that of the defendant, then it is held to be a remote cause of the injury and will not bar a recovery if the injury could have been prevented by the exercise of reasonable care and prudence on the part of the defendant." Thompson Neg., 1157, note 8; Gunter v. Wicker, 85 N.C. 310;Doggett v. R. R., 78 N.C. 305; Roberts v. R. R., 88 N.C. 560. Thus it appears that where the doctrine of Davies v. Mann is applicable it excludes
contributory negligence, and if this be so, it would be confusing to say that, notwithstanding the contributory negligence of the plaintiff, he may nevertheless recover if the defendant could by ordinary care have avoided the injury. Whether a third issue should be submitted is a matter addressed to the discretion of the judge, but when he does submit such an issue it will avoid dispute as to the meaning of terms to omit the word "contributory." This is in accord with the suggestion of Mr. Justice Avery
in the well-considered opinion in McAdoo v. R. R., supra.
Recurring, however, to the main question, it becomes important to determine what is a proximate cause within the meaning of the rule, and it was to this point that the learned argument of counsel for the defendant was chiefly addressed. In Farmer v. R. R., supra, and the authorities cited, it will be seen that this depends upon whether "the negligent act of the plaintiff precedes in point of time that of the defendant," and this is the view, according to Judge Thompson, which is supported by the weight of English and American authorities. (753) 2 Thompson Neg., 1157. Counsel insists that until the actual discovery of the person apparently in danger, the negligence of such person cannot be said in a legal sense to precede that of the defendant, and, therefore, unless the injury could have been avoided by the exercise of ordinary care after such discovery, the plaintiff has no cause of action. It must be manifest that, if this is the correct view, the rule in question would have but little room for application, for when an engineer actually sees a person apparently insensible to danger and fails to use ordinary care to avoid his injury, he is guilty of such a reckless and wanton disregard of human life that his conduct is so far *Page 462 
regarded as wilful as to practically place him entirely outside of the law of negligence. Beach, supra, 55. Many cases were cited by counsel in support of his proposition, but on examination it will be seen that they come from States where the duty of the engineer to anticipate and keep a lookout for persons along the line of the road is not imposed. The failure to advert to the nonexistence of this duty is but an illustration of one of the many ways by which the doctrine of negligence is confused. In speaking of such decisions a discriminating writer remarks: "But these cases may rest on the principle that it is no want of ordinary care not to look out for persons where they have no right to be." And it is to be noted that Judge Thompson's "discovery clause," as Mr. Beach disapprovingly calls it (Cont. Neg., 55), seems to be based in part upon this very idea. Neg., 1157, sec. 7. Judge Thompson, however, very candidly admits that his view is not sustained by the weight of authority, and, after stating that "the practitioner is concerned to know the conclusion of the courts rather than the views of writers," proceeds to lay down the rule, which omits the discovery feature and which has (754) been literally adopted by this Court in Farmer's case, supra, and many others.
That a discovery of the danger is not necessary to make the negligence of a plaintiff the proximate cause of the injury is evident from the case of Butterfield v. Forester, 11 East, 60, the earliest decision upon the subject of contributory negligence, as the negligence there which defeated a recovery was the failure of the plaintiff, by the exercise of ordinary care, to discover and avoid a collision with an obstruction which the defendant had negligently placed in the street of Derby. So, on the other hand, in the case of Davies v. Mann, it did not appear that the defendant discovered the historic donkey fettered upon the highway, and it seems that the failure to discover and avoid him was the true ground of the action. It is also to be remarked that in the first case in which the principle ofDavies v. Mann was applied by this Court it did not appear that the defendant saw the plaintiff in the place of danger, and it was held that, although the plaintiff was negligent, yet it was previous to that of the defendant, who, by the exercise of ordinary care, might have avoided the injury. Gunter v. Wicker, 85 N.C. 310. We think that a plain and simple statement of the rule is to be found in the work of Shearman Redfield on Negligence, Vol. I, sec. 99. It is, that "The party who last has a clear opportunity of avoiding the accident, notwithstanding the negligence of his opponent, is considered solely responsible for it." This is entirely consistent with our doctrine, as the negligence of the party injured in such a case may well be considered to have preceded that of the defendant in point of time. See Cooley on *Page 463 
Torts, 70, 71, which is cited and commented upon in Clark v. R. R.,109 N.C. 449; Bishop Noncontract Law, 463.
This view is but another way of stating the principle that "Where the negligence of the person inflicting the injury is subsequent to and independent of the carelessness of the person injured, and (755) ordinary care on the part of the person inflicting the injury would have discovered the carelessness of the person injured in time to have avoided its effects and prevented injuring him, there is no contributory negligence, because the fault of the injured party becomes remote in the chain of causation." The foregoing extract is taken from the able article on Contributory Negligence, 4 A. E., 27, and is sustained byTuff v. Warman, 5 C. B., 573, and numerous authorities cited in the notes, and also by our own decisions.
Applying the rule which we have stated to accidents upon railroad tracks, it may be illustrated as follows: First, there must be a duty imposed upon the engineer, as otherwise there can be no negligence to which the negligence of the injured party is to contribute. The duty under consideration is to keep a vigilant lookout (consistent with other necessary duties in running the train) in order to discover and avoid injury to persons who may be on the track and who are apparently in unconscious or helpless peril. When such a person is on the track and the engineer fails to discover him in time to avoid a collision, when he could have done so by the exercise of ordinary care, the engineer is guilty of negligence. The decisive negligence of the engineer is when he has reached that point when no effort on his part can avert the collision. Hence, if A, being on the track and, after this decisive negligence, fails to look and listen, and is in consequence run over and injured, his negligence is not concurrent merely, but really subsequent to that of the engineer, and he cannot recover, as he, and not the engineer, has "the last clear opportunity of avoiding the accident." If, however, A is on the track (and here it may be remarked, in passing, that being on the track is not per se negligence, Troy's case, supra), (756) and while there, and before the decisive negligence of the engineer, he by his own negligence becomes so entangled in the rails that he cannot extricate himself in time to avoid the collision, and his helpless condition could have been discovered had the engineer exercised ordinary care, then the negligence of A would be previous to that of the engineer, and the engineer's negligence would be the proximate cause, he, and not A, having the last clear opportunity of avoiding the injury. The same result would follow in the case of a wagon negligently stalled, when no effort of the owner could remove it, and there are other cases to which the principle is applicable. *Page 464 
These illustrations show how the rule of Davies v. Mann operates in cases where the primary duty is to keep a lookout and to discover, and the principle we have stated should be applied by the courts to the various phases of fact arising upon the testimony, and juries should not be left to determine the case simply under the general language of the rule. This, it seems to us, is the only way in which the rule can be properly applied in the presence of a duty like that which is imposed upon railroad companies as to persons or property upon the track. To say that the principle ofDavies v. Mann does not apply until the discovery of the danger is to practically abrogate the duty. It may be here observed that a recovery is permitted by a person who, being on the track when there is no immediate danger, is stricken down by the visitation of Providence, when he might have been discovered by the exercise of ordinary care. There being no negligence in such a case by simply going upon the track, there is no contributory negligence, and the same is true as to children of such tender years as to be incapable of discretion.
We have not attempted to discuss the law of contributory negligence in all of its aspects, and our chief object has been to meet the (757) arguments of the able counsel which were directed against the existence of the duty under consideration, and also the application of the principle of Davies v. Mann, until the actual discovery of the danger. It has been suggested that when the engineer fails to exercise ordinary care in discovering persons on the line of the track, he is not guilty of ordinary negligence, which all the text writers and our own Court time and again have declared is the legal effect of a want of ordinary care (McAdoo's case and authorities cited), but that his conduct is so wilful and wanton that there can be no contributory negligence whatever. Under such a rule, not only will railroads be made insurers against the consequences of the negligence of all persons trespassing upon their property, but even the engineer may be convicted of murder by reason of a mere inadvertence. It is hardly necessary to say that all of the decisions of our Court are against such a position, and this is the general current of authority. We think that, in declaring the duty we have been considering, this Court has gone as far as a reasonable exercise of its authority permits. If such a revolutionary change is to be made in the law of negligence, or rather if the law of negligence is to be altogether abolished in such cases, it should be done by the Legislature and not by the Court. Jus dicere non dare.
For the reasons given in the first two divisions of this opinion, we think there should be a
New trial. *Page 465