MARTHA SMITH, Administratrix of Joseph Smith, v. NORFOLK & SOUTHERN RAILROAD COMPANY.

*Action for Damages—Injury Resulting in Death—Railroads— Duty of Engineer to Keep Lookout — Person on Track— Drunkenness — Negligence — Contributory Negligence — Proximate Cause of Injury.*

1. It is the duty of a railroad company in running its trains to keep a lookout on its track in order to discover and avoid any obstructions that may be encountered thereon, and if by reasonable watchfulness on the part of the engineer he might discover a person on the track in a perilous position and apparently insensi-

ble to danger, in time to avoid injury, and the engineer fails to keep such lookout and by reason thereof injury results, the railroad company is guilty of negligence for which an action may be maintained, provided that the person injured has not.been guilty of contributory negligence.

2. In the absence of imminent danger the mere going upon the track is not contributory negligence but it is the duty of a person to look and listen for the approach of the train, and if, by his failure to exercise such care, a collision occurs he will be deemed guilty of such contributory negligence as would bar an action for the injury.

3. It is an elementary principle that intoxication will never excuse one for a failure to exercise the measure of ordinary care and prudence which is due from a sober man under the same circumstances; a person cannot thus voluntarily incapacitate himself from ability to exercise ordinary care and then set up such incapacity as an excuse for his negligence; therefore, where the breach of duty on the part of the defendant consisted simply in a failure to discover an intoxicated person lying on its track in time to avert injury, the negligence of such person continues, as in the case of a sober man, up to the moment of the collision, is concurrent with, if not indeed subsequent to, that of the defendant, and thus, being a proximate cause of the accident, constitutes contributory negligence which bars a recovery. It would be otherwise if the engineer, knowing or having reason to believe that such person was lying helpless on the track, failed to use all the means in his power to avoid the injury.

(Discussion by the Chief Justice of the rule in *Davies* v. *Mann*, in its relation to contributory negligence and the issues that should be submitted; also of the duty of railroads, in running trains, to persons on the track who have been stricken down by visitation of Providence, to children of tender age and others).

Associate Justices AVERY and CLARK, dissenting, *arguendo*.

ACTION for damages for the negligent killing of plaintiff's intestate by the defendant company, tried before *Bynum, J.*, and a jury, at Spring Term, 1893, of WASHINGTON Superior Court.

The issues submitted to the jury and the responses were as follows:

"1. Was Joseph Smith killed by the negligence of the defendant?   Answer, Yes.

"2. Did the said Joseph Smith, by his own negligence, contribute to his own death? Answer, Yes.

"3. Could the defendant, by the exercise of reasonable care and prudence, have avoided the injury? Answer, Yes.

"4. What damage, if any, is the plaintiff administratrix entitled to recover? Answer, $1,000."

It was in evidence that the engineer blew the locomotive whistle for the crossing and in a few minutes blew it again, the brakes were applied and the train stopped. The train, which was a long one, was running thirty or forty miles an hour according to one witness, and twenty or thirty according to another. There were besides the locomotive ten or twelve box and flat-cars in front, then the second-class car and then a first-class car. When the train stopped the remains of the deceased were under or opposite to the car in front of the second-class car. There were no air-brakes, but the brakes in use were good ones.

It was in evidence that deceased was addicted to the use of liquor and that he had been drunk for several days prior to his death, one witness saying that two hours before his death deceased was "crazy drunk." Another man was found lying drunk a few feet from deceased; an engineer by keeping proper lookout on the track might have seen a man's head on the track two hundred or three hundred yards distant.

The engineer testified for the defendant that upon seeing an object on the track at a distance of about one hundred and fifty yards he blew distress whistle to make it get off, blew for brakes, reversed the engine and used steam brake on engine, continuing to blow the distress whistle; that he discovered it to be a man, but could not stop the train before it ran over deceased; whistles were blown but the man did not move. As soon as he saw the man did not move the

engineer blew whistle and applied brakes and the train slackened.

On cross-examination the engineer said : "It was about one hundred and fifty yards from the crossing to where deceased was killed. I blew for first crossing one hundred and fifty yards back; saw object as I was going over the last crossing. I felt the jar of the brakes. Had two brakemen and fourteen cars in all. There were no brakes on the flat-cars; was running about twenty miles an hour; when train ran over deceased it was running about four miles an hour. I could not stop the train at speed I was running in less than one hundred and fifty yards; if I had had air-brakes I could have stopped. Ordinarily trains like the one I was in charge of have hand brakes."

Other witnesses testified to the sharp and quick blowing of the distress signals and that the train was stopped quickly by the brakes.

His Honor instructed the jury (among other things) as follows:

"It is the duty of the engineer or fireman in running the train to keep a lookout in front of the train to see objects on the track in order to avoid accidents, and if they fail to do so this failure is negligence on the part of the company, and if an injury results from a failure to keep this lookout the company will be liable; and if you find that the plaintiff's intestate was run over by the train of the defendant and killed because of a failure of the officers in charge of and running the train to keep this lookout and see deceased lying on the track, it would be negligence, and you will answer the first issue, 'Yes.'

"If you find the facts to be that, by reasonable diligence in keeping a lookout, the engineer could have seen the deceased lying on the track in time to have stopped the train before it ran over the deceased and he did not stop it,

it would be negligence, and you will answer the first issue, 'Yes.'

"The fact that the defendant did not have air-brakes on the train is not negligence.

"It was the duty of the defendant to have sufficient brakes and appliances .to have stopped the train in emergencies of this character in a reasonable distance, and if you find that the brakes were not sufficient for that purpose it would be negligence, and if the deceased came to his death in consequence of this fact, you will answer the first issue, 'Yes.'

"It is insisted by the defendant that the train was properly equipped and manned for trains of the character of this one, being a mixed train of passenger and freight cars. The plaintiff insists that two brakemen to fourteen cars was insufficient. This is a question for you. If you find from all the evidence in this case that two brakemen and the steam brake on the engine were sufficient to properly run the train and control it, then the failure to have more is not negligence; but if you find from all the circumstances, growing out of this evidence as you find it to be, that two brakemen, the steam brake on engine and the number of brakes you find were on this train were insufficient to properly run and control it, then the failure to have a sufficient number would be negligence in the company.

"If you find that the train could have been stopped with the appliances with which it was equipped after the deceased could by reasonable diligence have been seen, and it was not stopped, but ran over deceased and killed him, it would be negligence, and you will find the first issue, 'Yes.'

"The question for you as to the outlook is not whether the engineer *did* see the deceased lying on the track, but whether he could by the exercise of reasonable diligence have seen him; and if he could by reasonable diligence

have seen him in time to stop the train, but did not in fact see him in time to stop it, it would be negligence.

"If you find the engineer kept a lookout and saw the deceased lying on the track as soon as he could have seen him and immediately used all the appliances he could control in order to stop the train and could not do so, it would not be negligence, and you will answer the first issue, 'No.'

"If you answer the first issue 'No,' you need not answer the others, for unless the deceased came to his death by the negligence of the defendant the plaintiff cannot recover.

"If you answer the first issue 'Yes,' I instruct you to answer the second issue "Yes," if you believe the evidence in this case.

"If you answer the first and second issues 'Yes,' then come to the third. On this issue the same law is applicable that I have laid down to you as applicable to the first, and the facts that would constitute negligence under the first issue would constitute negligence under the third issue; so that if the facts proven satisfy you that the defendant was guilty of negligence and you answer the first issue 'Yes,' it will be your duty to answer the third issue 'Yes.'

"If you answer this issue 'No,' then you need not consider the question of damages, because the plaintiff would not be entitled to recover damages; but if you answer the first three issues 'Yes,' then you will consider the fourth issue, for although the deceased may have contributed to his own death by his own negligence, still if the defendant could by reasonable care have stopped its train, and not run over and killed him, the plaintiff would still be entitled to recover."

The defendant excepted to the charge delivered by the Court, and assigned the following errors:

"1. The charge assumes that the defendant failed to keep proper lookout on its track to avoid the accident, and did not properly leave the question to the jury.

SMITH v. RAILROAD.

" 2. In the instructions on the third issue that ' the same law is applicable to it as the first and the same facts that would constitute negligence on the first issue would con-stitute negligence on the third issue; so that if the facts proven satisfy you that the defendant was guilty of negli-gence and you answer the first issue ' Yes,' it will be your duty to answer the third issue .' Yes.' ' "

There was judgment on the verdict for plaintiff, and defendant appealed.

*Mr. A. O. Gaylord*, for plaintiff.
*Messrs. W. D. Pruden* and *W. H. Day*, for defendant (ap-pellant).

SHEPHERD, C. J.: 1. We are of the opinion that there should be a new trial upon the charge of his Honor on the third issue.    This issue was intended to present to the jury the principle of *Davies* v. *Mann*, 10 M. & W., 546, and the jury were instructed that the same law and facts which would constitute negligence under the first issue would be applicable to the third issue.    The evidence upon the first issue tended to prove negligence on the part of the defend-ant by reason of its failure to keep a proper lookout in order to discover the deceased in time to avoid the acci-dent, and also because of its failure to properly equip the train by providing sufficient brakes and brakemen.    Now, as the doctrine of *Davies* v. *Mann* is based upon some omis-sion of duty occurring after the negligence of the deceased, *Gunter* v. *Wicker*, 85 N. C., 310 (which negligence was found by the Court on the second issue), it is plain that there was error in blending these two essentially different elements of negligence—the one existing prior and the other occurring subsequently to the negligence of the deceased—and applying them indiscriminately to the third

issue. We cannot know upon what phase of the testimony the jury acted in determining the question of negligence upon the first issue, and we have just as much right to assume that, under the charge of the Court, they found that the negligence consisted simply in the failure to properly equip the train as that they predicated it upon the alleged failure to observe ordinary care in keeping a reasonable lookout, etc. Under the first view there can be no doubt that the finding upon the second issue would have barred a recovery; for if the engineer discovered the deceased as soon as he could have done so by keeping a proper lookout, and immediately applied all the means within his control to avoid the collision, and his failure to do so was by reason of the improper equipment of the train (an omission of duty which might have existed for weeks or months), then the negligence of the defendant would be no more proximate than that of the deceased, and there would be no ground whatever for the operation of the principle of *Davies* v. *Mann*. If this be not so, and the principle of that case is to be extended to negligence occurring both prior as well as that which is subsequent to the negligence of the deceased, it is perfectly useless to pretend that the doctrine of contributory negligence as to cases of this character has any place in the jurisprudence of this State. This inadvertence on the part of his Honor (and such alone do we consider it) affords the defendant a clear ground of new trial, and this would be equally true if, as suggested, the third issue had been omitted and the same instruction had been given on the first.

2. We are also of the opinion that there was error in ignoring that universally established principle in the law of contributory negligence which imposes upon one who has voluntarily disabled himself by reason of intoxication the same degree of care and prudence which is required of a

sober person. This is so well established that it would seem unnecessary to cite authority in its support, but as it appears to be questioned we will reproduce a few extracts from some of the text-books, which are substantially repeated by every writer upon the subject. Mr. Wood, in his work on Railways (Volume II, section 1457), after stating that one cannot voluntarily incapacitate himself from ability to exercise ordinary care and then set up such incapacity as an excuse for his negligence, remarks: "The rule, therefore, is that the same care is required of a person when he is intoxicated as when he is sober, though, if the defendant is aware of his state before the injury, it is bound to exercise greater care to avoid inflicting any injury upon him." In Patterson's Railway Accident Law, 74, it is said: "The fact that the person injured was intoxicated at the time of the injury will not relieve him from the legal consequences of his contributory negligence." In Bishop's Non-contract Law, 513, it is said: "Contributory negligence is the product of a general ill condition of the mind and not of a specific intent. Therefore, on principle, drunkenness does not excuse it, and so, also, are the authorities." In 1 Thompson on Neg. (430) the author remarks: "Nor will the self-inflicted disability of drunkenness excuse the wayfarer from the exercise of such care as is due from a sober man." In Shearman & Redfield on Neg. (1 Vol., 93) it is said in effect that if the intoxication is such that it prevented the injured person from taking ordinary care to avoid the injury he cannot recover." See also, Pearce on Railroads, 295; Whitaker on Negligence, 403, note; 4 Am. and Eng. Enc., 79. In Beach on Cont. Negligence (403), it is said: "Drunkenness is a wholly self-imposed disability, and in consequence is not to be regarded with that kindness and indulgence which we instinctively concede to blindness, or deafness, or any other physical infirmity. * * * Disabilities, more-

over, of any kind are to be a shield and never a sword. It would be a strange rule of law that regarded a certain course of conduct negligent and blameworthy upon the part of a sober man, but that held the same conduct on the part of the same man, when intoxicated, venial and excusable. Drunkenness will never excuse one for a failure to exercise the measure of care and prudence which is due from a sober man under the same circumstances. Men must be content, especially when they are trespassers, to enjoy the pleasures of intoxication *cum periculis.* When they make themselves drunk, and in that helpless condition wander upon the premises of sober men and sustain an injury, they will not be heard to plead their intoxication as an answer to the charge of negligence; and the Courts consistently hold that such intoxicated trespassers (the notes show that the author is speaking of railroad accidents) have no standing in any forum where justice is impartially administered. These authorities, supported by a multitude of cases cited in the notes to the various text-books, establish beyond all controversy that the deceased under the circumstances of this case (that is, not having been discovered by the engineer in time to avoid injury) is to be treated, up to the moment of the collision, as a sober man, and that his helpless condition is not to be assimilated to those cases where the disability has not been self-imposed, and where the helpless condition is treated as a remote cause of the injury by reason of previous negligence or the visitation of Providence. Of course if the engineer knew, or had reason to know, of his helpless condition in time to stop the train and avoid the injury, and failed to do so, he would be guilty of such reckless conduct as would subject him to the punishment of the criminal law, as well as impose a civil liability upon the railroad company. This principle, as we have stated,

47

is peculiar to the self-imposed disability of intoxication, and is as firmly fixed in the law of negligence as it is, as a general rule, in the criminal law of the land. That this is so is evident from the fact that after the most industrious research there cannot, it seems, be found in the entire annals of English or American jurisprudence a single decision at common law (nor have we seen any under a statute) in which a recovery has been permitted for injuries inflicted along the line of the road under the circumstances of this case. Even in Missouri and Texas, where perhaps the most advanced doctrine obtains, it has been decided that the action cannot be maintained unless the engineer knew, or had reason to know, of the exposed and unconscious condition of the deceased. *Yarnall* v. *Railroad*, 75 Mo., 575; *Houston* v. *Symkins*, 54 Texas, 615. See also, numerous cases cited in the notes to *Kean* v. *Railroad*, 19 Am. and Eng. R. R. Cases, 321. In the Texas case it will be noted that the Court distinctly held that it was the *duty* of the engineer to keep a lookout to avoid injury even to trespassers, yet a new trial was granted on the ground that it was not left to the jury to determine whether the injured party was intoxicated or was suffering from a Providential visitation, "a fit." If his lying on the track insensible to danger was due to the former and not to the latter cause, it was declared that the plaintiff could not recover. It may be further observed that this case is cited as an authority in *Troy* v. *Railroad*, 99 N. C., 298, and it is remarkable that even in the two States where it is said the doctrine of comparative negligence obtains this action could not be maintained. *Railroad* v. *Cragin*, 71 Ill., 177; *Railroad* v. *Bell*, 70 Ill., 102; *Railroad* v. *Riley*, 47 Ill., 514; *Railroad* v. *Hankerson*, 61 Ga., 114. We are unable to understand how, upon principle, the case of one who is asleep on the track can be assimilated, as argued, to that of the self-imposed

disability of intoxication, which, as we have seen by all of the authorities, stands upon its own peculiar ground. Being on the track is not itself negligence (Troy's case). and if such a person is unexpectedly overcome by sleep his disability cannot be said to have been voluntarily and self-imposed. Neither are we able to see how the case of a deaf mute walking on the track can be likened unto that of a person who is lying there stupefied by strong drink. A high degree of care is required of one who is deaf and who places himself in a position of known danger; still, if the engineer can by reasonable diligence discover him on the track, and also his insensibility to danger, the disability being involuntary, he is entitled to recover.

Nor can we perceive any similarity between the intoxicated man and a cow that has strayed upon the track, the cow, of course, not being the author of its insensibility to danger, and the owner really guilty, as held by this Court, of no negligence whatever in turning his cattle out to graze.

The principle of which we are speaking has never been denied by this Court as a distinct ground of decision, though the case of a drunken man was used in Deans' case (107 N. C., 686), as one of the illustrations of certain very important principles in the law of negligence, which it will be seen hereafter we fully approve.

The point did not arise in that case, as it was not found or admitted that the deceased was intoxicated, and the ruling below was simply to the effect that upon the whole testimony the defendant owed no duty to look out and discover trespassers upon the track, and therefore was not guilty of negligence. The ruling of his Honor was regardless of the fact whether the deceased was drunk or sober, and it was necessary that this Court should declare the duty of railroad companies as to persons on the track at places

other than crossings, and also to discuss the doctrine of contributory negligence in its relation to the principle commonly called the rule in *Davies* v. *Mann*. The language used in the opinion is as follows: "If the engineer discover, or by reasonable watchfulness may discover, a person lying upon the track asleep or drunk, or see a human being who is known by him to be insane or otherwise insensible to danger or unable to avoid it, upon the track in his front, it is his duty to resolve all doubts in favor of the preservation of life, and immediately use every available means short of imperiling the lives of passengers on his train to stop it." From this language it might be inferred that the duty of the engineer begins only upon the discovery of the person in danger; for until he does discover him the duty of resolving all doubts in favor of his preservation from danger cannot very reasonably arise. Taken, however, in connection with other parts of the opinion and the declaration of the Court in subsequent cases, it cannot be doubted that it was intended to declare the duty of keeping a proper lookout for all persons who may be on the track. The declaration, however, of a duty and the effect of intoxication in contributory negligence are very different things, and the latter question was, for the reasons above mentioned, not presented to the Court. It is true that from the opinion it might be inferred that intoxication, if it had been found as a fact, would have excused the negligence of the deceased, but, as we have said, this particular point was not decided, nor do the authorities cited in the opinion support this view. Let us examine these cases:

In *Railroad* v. *Smith* (52 Texas, 179) the injury was inflicted upon a man who was walking upon the railroad track and was negligent. He was held under the circumstances to be guilty of contributory negligence, and it is

to be noted that there was evidence tending to show that he was intoxicated.

In *Railroad* v. *Miller* (26 Mich., 279) the action was brought for injuries received by the plaintiff in a collision between a locomotive and the wagon in which the plaintiff was riding. There was nothing in the case about intoxication, but in the course of his learned opinion Judge CHRISTIANCY, in discussing the general subject of negligence, remarked that if the engineer "sees" a person in peril on the track whom he has reason to believe to be badly intoxicated, or otherwise insensible to danger, he must use all the means in his power to stop the train and avoid a collision.

In *Railroad* v. *St. John* (5 Sneed, 504) the accident complained of was to a child eight years of age, and in *Weeks* v. *Railroad*, 56 Cal., 513, the accident was to a child six or seven years of age. In neither of these cases was the effect of intoxication discussed, and they were evidently cited for the purpose of sustaining the rule imposing the duty upon the engineer of keeping a lookout for persons along the line of the track, and upon that question they are in point.

To the same effect is the much-cited case of *Isabel* v. *Railroad* (27 Conn., 393), but as bearing upon the particular question under consideration it may be noted that the action was brought for the killing of cattle straying upon the track, and that the duty which the law imposes upon an intoxicated person was in no way involved in the decision. The following language, however, appears in the discussion of the general subject: "Or, an intoxicated man is lying in the traveled part of the highway, helpless if not unconscious: must I not use care to avoid him? May I say that he has no right to encumber the highway, and therefore carelessly continue my progress, regardless of consequences? Or, if such a man has taken refuge in a field of

grass or a hedge of bushes, may the owner of a field, *knowing* the fact, continue to mow on or fell trees, as if it was not so? Or, if the intoxicated man has entered a private lane or by-way and will be run over if the owner does not stop his team which is passing through it, must he not stop them?" We have quoted the entire paragraph, so that it can be readily seen that this *dictum* (and it is nothing more) really means what we all concede—that if such an intoxicated person is discovered it is a duty dictated by humanity as well as the law to avoid inflicting an injury upon him. If this is not so, what meaning is to be attached to the words "carelessly *continue* my progress," "*knowing* the fact," and "does not *stop* them"?

When Mr. Wood (2 Vol., 1464) speaks of the duty which is due to persons lying on the track in connection with a child or an animal, he very clearly did not intend to say that when a drunken man is not discovered he is to be absolved from the consequences of his own negligence, as the only case he refers to of persons lying on the track is the case of *Meeks* v. *Railroad, supra,* where a child lying on the track was run over and injured. That he did not mean that a drunken man would be excused from exercising the same care that is required of a sober man is evident from his explicit statement of the contrary doctrine, which we have heretofore quoted and which is sustained by all of the authorities. This is also perfectly manifest from the fact that on the very next page he quotes with approval that part of the opinion in *Railroad* v. *Miller, supra,* which contains the language of Judge CHRISTIANCY to which we have referred, and which indicates that the railroad company is only liable for the failure of duty after the discovery of the drunken man. The author says: "And this we believe is an accurate statement of the duty of railway companies under the circumstances referred to."

It is manifest from this examination that these cases do not sustain the proposition that an intoxicated person is absolved from the duty of exercising ordinary care, and it is but proper to say that they were probably cited for the purpose of sustaining the general principles laid down in the extract which we have quoted. Having shown, we think conclusively, not merely by the weight but by the entire course of judicial opinion, that the self-imposed disability of intoxication affords no more excuse in the law of negligence than it does in the criminal law, we cannot understand how we could be justified in the abrogation of this principle which has stood for centuries simply by reason of what may be implied from the language of an opinion in a case that did not distinctly raise the question. This, it seems to us, would not be following the doctrine of *stare decisis*, and the argument that a Court can arbitrarily reject a fundamental principle of law by calling it a fiction is, we think, wholly inadmissible. If we can do this there is no reason why the same principle may not be rejected as a fiction in the criminal law, and, indeed, we do not see why we could not dispose of any other well-grounded rule of law in the like summary manner. The supposed analogy with the principle of equity which relieves a wholly intoxicated person against the consequences of his contracts cannot be supported. Equity shields him in such cases when he has been imposed upon by reason of such incapacity, but neither equity nor law ever converts intoxication into a sword by means of which a drunken man can make a profit out of his self-imposed disability when a sober man under the same circumstances would be entitled to no relief. It would, as Mr. Beach says, be a strange law that would enable a drunken man to recover when under the same circumstances a sober man would be denied all redress; and there certainly can be no more inhumanity in denying

a recovery to one who, by an act done in his intoxicated condition, might probably contribute to the wrecking of a train and the destruction of the lives of passengers, than to hang a man for a murder committed while wholly unconscious of his act by reason of the influence of strong drink. The law does not treat such unfortunate persons who may be on the track as outlaws. On the contrary, this Court and several others have declared it to be the duty of the engineer to keep a vigilant lookout for them and all other persons, but when he fails to discover them by the omission of ordinary care (and this is the measure of his duty—Deans' case, *supra;* McAdoo v. *Railroad,* 105 N. C.) there would seem to be no injustice in denying a recovery to one who has voluntarily stupefied his senses so as to be unable to provide for his own safety. The engineer is running a train over his own right of way, and by an inadvertence which amounts simply to the failure to use ordinary care fails to discover a person who really has no right to be on the track and who he cannot reasonably anticipate will make it a place of drunken repose. The engineer when he discovers the man uses every means in his power to avoid the injury; the man, had he been sober, could easily have escaped, but by reason of the self-imposed disability of intoxication makes no effort to do so. Can there be anything wrong in refusing to cast upon the defendant the whole responsibility of the collision and making it pay for an accident which would not have happened had the deceased been sober, and for which had he been sober he could not have maintained an action? The law is just as well as humane and denies a recovery under such circumstances. Such has always been the law both in England and America; it has been approved by such great jurists as RUFFIN, NASH, PEARSON, and their distinguished successors, and we feel that we are treading upon safe ground when we follow in their footsteps.

If the Legislature sees fit to change the law in this respect it has the power to do so, but we do not think that so radical a change in the law of negligence should be wrought by what we cannot help thinking would be "judicial legislation" of the most pronounced character.

As we have already intimated, the fact that the elementary principle referred to seems to be seriously disputed is the only reason we have said so much in its support, as we believe it to be established beyond all question by the consensus of judicial decision as well as the opinion of all of the authors upon the subject.   If, then, the same degree of care is required of the deceased " as is required of a sober man under the same circumstances " it is plain that his negligence was concurrent with that of the engineer, and he was therefore guilty of contributory negligence.   McAdoo's case, *supra*, and the authorities cited.   Indeed, as we shall hereafter see, his negligence, operating as it did up to the moment of the collision and after the decisive negligence of the engineer, was really subsequent negligence and goes far beyond what is sufficient to bar a recovery.   Had the deceased been looking and listening as he was required to do, he would have had ample time to have escaped from his peril after the engineer had passed the point when his efforts would have been unavailing to save him.   Under this view, he being in contemplation of the law able to avoid the consequences of the prior negligence of the defendant, it would seem that, if the train had been injured by the obstruction, his negligence would have been the proximate cause of the accident, and the defendant and not the deceased would have been entitled to recover.   A sober man, as we have seen, very clearly could not have recovered, and is a premium to be offered to negligence caused by the self-imposed disability of drunkenness, which prevents one from using ordinary care by look-

ing and listening for the approach of trains which he is bound to know the defendant has a right to run and will run over its own property in the pursuit of its legitimate business? In this case there is a total absence of testimony tending to show that the conduct of the engineer was wanton or willful, and his testimony to the effect that he sounded the alarm and applied the brakes and used all other means under his control to avoid the accident, as soon as he discovered the deceased lying on the track, is wholly uncontradicted. The action, then, being founded upon the failure to use ordinary care is subject, of course, to the defence of contributory negligence, and we cannot conceive of a plainer case than the one now before us.

We feel very sure that his Honor's failure to apply the principle which we have been discussing entitles the defendant to a new trial.

3. While the foregoing considerations are, in our opinion, sufficient to dispose of this appeal, we deem it our duty, in view of the argument of counsel, to express our approval of certain general principles laid down in Deans' case, *supra,* and also our views as to how they should be applied. Leaving, then, the facts of this particular case behind us, we will state that one of the principles referred to is that which imposes upon the engineer of a railroad train the duty of keeping a vigilant lookout on the track in order to discover and avoid any obstructions that may be encountered thereon. This duty is due to the passengers and, when consistent with the necessary attention of the engineer and other employees on the engine to its safe and proper management, the duty is likewise due to the owner of cattle running at large, to the owner of other property, which under certain circumstances may be on the track, and also, as a general rule, to persons who may be on the same at places other than crossings. When under the particular

circumstances of a case such property or persons may, by the exercise of ordinary care, be discovered in time to avoid a collision, the failure to exercise such ordinary care is negligence and the plaintiff will be entitled to recover unless he has been guilty of contributory negligence. Of course, where a person is discovered and is apparently not unconscious of danger it is to be presumed that he will observe ordinary caution and the engineer is not required to stop the train. Although this principle as applied to persons on the track does not generally prevail, there seems to be a growing disposition on the part of the Courts to recognize it as a common law duty, and in Georgia and Tennessee it has been imposed by statute. In Tennessee, however, it was said by LURTON, C. J. (*Patton* v. *Railroad*, 89 Tenn., 370; see also, St. John's case, *supra*), that such is the law without reference to the statute, and he quotes with approval the language of Mr. Wood, who says "that a railroad company is bound to keep a reasonable lookout for trespassers upon its track, and is bound to exercise such care as the circumstances require to prevent injury." 2 Wood R. Law, 1267. This language is also quoted with approval by the Supreme Court of West Virginia and a recovery was sustained upon the same principle for injuries to a child trespassing upon the track. *Gunn* v. *Railroad*, 14 S. E. R., 465. To the same effect is *Meeks* v. *Railroad*, *supra*, and other cases. This ruling on our part is supported by the plain intimation, if not indeed the decision of this Court in *Troy* v. *Railroad*, *supra*, in which it is said that a person walking upon a railroad track is not guilty of contributory negligence *per se*, nor does such a "technical" trespass relieve the railroad company of the duty of exercising ordinary care to avoid the infliction of injury, provided such person after he gets on the track does nothing "positive or negative to contribute to the immediate injury." The Court

adopts the principle laid down in the leading case of *Railroad* v. *Simpkins, supra,* and it may be well to reproduce an extract from the opinion in that case. The Court said : "In our opinion there is a distinction between the duty devolving on the owners of land on which there is a dangerous excavation and that devolving on a corporation invested by law with the extraordinary power of traversing the country with huge cars whose progress is everywhere attended with danger. They who place such dangerous machines in motion should, we think, be required to take precautions against their injuring any one who may happen to be in their pathway. 'The care in conducting any business should be proportionate to its dangerous nature.' *German* v. *Railroad,* 26 Wis., 448. The extent of the precautions required of a railroad company depends on all the circumstances. The regulations of railroads exact watchfulness of the engineers, and this rule should operate for the benefit of the public as well as the company. Authorities are not lacking in support of the position that a 'reasonable lookout,' varying according to the danger and all the surrounding circumstances, is a duty always devolving on those in charge of a train in motion. *Railroad* v. *State,* 36 Md., 366; *Harland* v. *Railroad,* 65 Mo., 22; *Hicks* v. *Railroad,* 64 Mo., 430. The duty of watchfulness has often been enforced against railroads in cases of injuries to cattle trespassing on their tracks, and that, too, in the absence of any statutory provision or in cases outside of the statute. We prefer that line of decisions holding railroads bound to exercise their dangerous business with due care to avoid injury to others as correct in principle and sound in policy, and as protecting even a trespasser who is not guilty of contributory negligence." These principles, when applied with a proper regard to the defence of contributory negli-

gence, commend themselves to our judgment as just as they are humane, and they are especially applicable to railroads operating within our State, where, as a matter of common knowledge, the use of their tracks by pedestrians is tacitly acquiesced in. We can see no hardship in exacting this duty of engineers and holding their principals responsible when they fail to exercise due care in discovering and avoiding injuries to helpless persons between crossings, who are in plain view upon their tracks; and this is really the duty imposed upon them in such cases. As we have stated, this duty has been established by several decisions of this Court, and at the present Term we enforced it in the case of an injury to a child of tender years, who could, by the exercise of ordinary care, have been discovered by the engineer. *Bottoms* v. *Railroad.* We see no reason to reverse our former rulings upon this important subject simply because in some of the other States a contrary doctrine is held. We believe that they are founded upon principle as well as respectable authority, and for these reasons as well as a due regard to the doctrine of *stare decisis* we should adhere to the principles therein enunciated.

4. We have thus dwelt upon the existence and nature of this duty because it is impossible to discuss the doctrine of contributory negligence, even to a limited extent, unless we have a clear conception of this constituent element, as well as of other terms and definitions relating to the subject. Indeed, it may be safely remarked that no science is more dependent upon the accuracy of its terms and definitions than that of the law. Looseness of language and *dicta* in judicial opinions, either silently acquiesced in or perpetuated by inadvertent repetition, often insidiously exert their influence until they result in confusing the application of the law, or themselves become crystallized into a

kind of authority which the Courts, without reference to true principle, are constrained to follow. These observations are particularly applicable to the doctrine of contributory negligence and especially in its relation to what is generally called the rule of *Davies* v. *Mann*. All along the highway of judicial decision we find it so strewn with the wrecks of overruled cases, exploded *dicta* and condemned or qualified expressions that we are inclined to sympathize with the despairing remarks of Judge THOMPSON that "the whole subject of contributory negligence remains in a state of great confusion and uncertainty." 2 Vol. Neg., sec. 7. Mr. Beach, Mr. Patterson and some other writers attribute much of this obscurity to improper definitions of the rule in *Davies* v. *Mann*, and we think with them that it is simply a means of determining whether the plaintiff's negligence is a remote or a proximate cause of the injury. Before the introduction of the rule any negligence on the part of the plaintiff, which in *any degree* contributed to the accident, was juridically treated as a proximate cause, and constituted contributory negligence which barred a recovery. *Dowell* v. *Nav. Co.*, 5 El. & Bl., 194. Several reasons have been assigned in support of this principle, one of which is that a court of law, unlike a court of admiralty, has "no scales to determine in such cases whose wrong-doing weighed most in the compound that occasioned the mischief," and therefore if the plaintiff were allowed to recover "it might be that he would obtain from the other party compensation for his own misconduct." 2 Thompson Neg., 1146—1154. This was considered a harsh rule, as it left the plaintiff to bear all the damages although he may have been but remotely, and consequently but slightly, in fault. The doctrine, however, was qualified by the ruling in *Davies* v. *Mann*, and it was determined that although the plaintiff was guilty of a want of ordinary

care in contributing to the injury, yet this would not pre-
vent him from maintaining an action if the defendant
might have avoided the injury by the exercise of ordinary
care on his part.    Much confusion, as we have seen, has
resulted in the application of this principle and it has been
claimed to be authority for the doctrine of comparative
negligence, and it has also been criticised as practically
abolishing the doctrine of contributory negligence alto-
gether.    A very reasonable explanation of it is made by
Mr. Patterson, however, who says: "The rule has been
misunderstood and misapplied.    It means only that that
negligence upon the part of the plaintiff which bars his
recovery from the defendant must have been a proximate
cause of the injury and that it is not a proximate but only
a remote cause of the injury, when the defendant, notwith-
standing the plaintiff's negligence, might by the exercise
of ordinary care and skill have avoided the injury.    Thus
stated, the rule is consistent with the theory upon which
the doctrine of contributory negligence is based and fur-
nishes no support for that of comparative negligence."
Patterson Railway Accident Law, 51.

Mr. Beach expresses the same view and adds that "the
attempts of the Judges to ring a new change, or to find
some novel and original phrase in which to express the
rule that whenever the negligence of a plaintiff proxi-
mately contributes to cause the injury for which he seeks
to recover damages he has no cause of action, has thrown
the law into confusion."    Contributory Negligence, p. 33;
Pollock Torts, 295; Bishop Non-contract Law, 459; 2
Wood, 1447; Wharton Neg., 323; 4 Am. and Eng. Enc., 18,
19, 27, notes.    It must also be observed that shortly after
the decision of *Davies* v. *Mann* Lord CAMPBELL, in 5 El. &
Bl., 195, understood the doctrine to be the same as stated
above.    These views have been distinctly adopted by this

Court in several cases and are well expressed in *Farmer* v. *Railroad*, 88 N. C., 564, in which Mr. Justice ASHE states that whether the plaintiff was guilty of contributory negligence depends upon whether his act "was a proximate or a remote cause. If the act is directly connected so as to be concurrent with that of the defendant, then his negligence is proximate and will bar his recovery; but where the negligent act of the plaintiff precedes in point of time that of the defendant, then it is held to be a remote cause of the injury and will not bar a recovery, if the injury could have been prevented by the exercise of reasonable care and prudence on the part of the defendant." Thompson Neg., 1157, note 8; *Gunter* v. *Wicker, supra; Doggett* v. *Railroad*, 78 N. C., 305; *Roberts* v. *Railroad*, 88 N. C., 560. Thus it appears that where the doctrine of *Davies* v. *Mann* is applicable it *excludes* contributory negligence, and if this be so it would be confusing to say that notwithstanding the contributory negligence of the plaintiff he may, nevertheless, recover if the defendant could by ordinary care have avoided the injury. Whether a third issue should be submitted is a matter addressed to the discretion of the Judge, but when he does submit such an issue it will avoid dispute as to the meaning of terms to omit the word "contributory." This is in accord with the suggestion of Mr. Justice AVERY in the well-considered opinion in *McAdoo* v. *Railroad, supra.*

Recurring, however, to the main question, it becomes important to determine what is a proximate cause within the meaning of the rule, and it was to this point that the learned argument of counsel for the defendant was chiefly addressed. In *Farmer* v. *Railroad, supra,* and the authorities cited it will be seen that this depends upon whether "the negligent act of the plaintiff *precedes in point of time* that of the defendant," and this is the view, according to

Judge Thompson, which is supported by the weight of English and American authorities. 2 Vol. Neg., 1157. Counsel insists that until the actual discovery of the person apparently in danger the negligence of such person cannot be said in a legal sense to precede that of the defendant, and therefore unless the injury could have been avoided by the exercise of ordinary care after such discovery the plaintiff has no cause of action. It must be manifest that, if this is the correct view, the rule in question would have but little room for application, for when an engineer actually sees a person apparently insensible to danger and fails to use ordinary care to avoid his injury he is guilty of such a reckless and wanton disregard of human life that his conduct is so far regarded as willful as to practically place him entirely outside of the law of negligence. Beach, *supra*, 55. Many cases were cited by counsel in support of his proposition, but on examination it will be seen that they come from States where the duty of the engineer to anticipate and keep a lookout for persons along the line of the road is not imposed. The failure to advert to the non-existence of this duty is but an illustration of one of the many ways by which the doctrine of negligence is confused. In speaking of such decisions a discriminating writer remarks: "But these cases may rest on the principle that it is no want of ordinary care not to look out for persons where they have no right to be," and it is to be noted that Judge Thompson's "discovery clause," as Mr. Beach disapprovingly calls it (Cont. Neg., 55), seems to be based in part upon this very idea. Neg., 1157, sec. 7. Judge Thompson, however, very candidly admits that his view is not sustained by the weight of authority and, after stating that "the practitioner is concerned to know the conclusion of the Courts rather than the views of writers," proceeds to lay down the rule which omits the discovery feature and

which has been literally adopted by this Court in Farmer's case, *supra*, and many others.

That a discovery of the danger is not necessary to make the negligence of a plaintiff the proximate cause of the injury is evident from the case of *Butterfield* v. *Forester*, 11 East, 60, the earliest decision upon the subject of contributory negligence, as the negligence there which defeated a recovery was the failure of the plaintiff by the exercise of ordinary care to discover and avoid a collision with an obstruction which the defendant had negligently placed in the street of Derby. So, on the other hand, in the case of *Davies* v. *Mann*, it did not appear that the defendant discovered the historic donkey fettered upon the highway, and it seems that the failure to discover and avoid him was the true ground of the action. It is also to be remarked that in the first case in which the principle of *Davies* v. *Mann* was applied by this Court it did not appear that the defendant saw the plaintiff in the place of danger, and it was held that although the plaintiff was negligent, yet it was previous to that of the defendant, who by the exercise of ordinary care might have avoided the injury. *Gunter* v. *Wicker, supra*. We think that a plain and simple statement of the rule is to be found in the work of Shearman & Redfield on Negligence, Volume I, section 99. It is that "The party who last has a clear opportunity of avoiding the accident, notwithstanding the negligence of his opponent, is considered solely responsible for it." This is entirely consistent with our doctrine, as the negligence of the party injured in such a case may well be considered to have preceded that of the defendant in point of time. See Cooley on Torts, 70, 71, which is cited and commented upon in *Clark* v. *Railroad*, 109. N. C., 449; Bishop Non-contract Law, 463.

This view is but another way of stating the principle that "where the negligence of the person inflicting the

injury is subsequent to and independent of the carelessness of the person injured, and ordinary care on the part of the person inflicting the injury would have *discovered* the carelessness of the person injured in time to have avoided its effects and prevented injuring him, there is no contributory negligence, because the fault of the injured party becomes remote in the chain of causation." The foregoing extract is taken from the able article on Contributory Negligence in the American and English Enc., 4th Vol., 27, and is sustained by *Tuff* v. *Warman*, 5 C. B., 573, and numerous authorities cited in the notes, and also by our own decisions.

Applying the rule which we have stated to accidents upon railroad tracks, it may be illustrated as follows: First, there must be a duty imposed upon the engineer, as otherwise there can be no negligence to which the negligence of the injured party is to contribute. The duty under consideration is to keep a vigilant lookout (consistent with other necessary duties in running the train) in order to discover and avoid injury to persons who may be on the track and who are apparently in unconscious or helpless peril. When such a person is on the track and the engineer fails to discover him in time to avoid a collision, when he could have done so by the exercise of ordinary care, the engineer is guilty of negligence. The decisive negligence of the engineer is when he has reached that point when no effort on his part can avert the collision. Hence, if A, being on the track and after this decisive negligence, fails to look and listen and is in consequence run over and injured, his negligence is not concurrent merely but really subsequent to that of the engineer, and he cannot recover, as he and not the engineer has "the last clear opportunity of avoiding the accident." If, however, A is on the track (and here it may be remarked in passing that being on the track is not

*per se* negligence, Troy's case, *supra*) and while there, and before the decisive negligence of the engineer, he by his own negligence becomes so entangled in the rails that he cannot extricate himself in time to avoid the collision, and his helpless condition could have been discovered had the engineer exercised ordinary care, then the negligence of A would be previous to that of the engineer, and the engineer's negligence would be the proximate cause, he, and not A, having the last clear opportunity of avoiding the injury. The same result would follow in the case of a wagon negligently stalled, when no effort of the owner could remove it, and there are other cases to which the principle is applicable.

These illustrations show how the rule of *Davies* v. *Mann* operates in cases where the primary duty is to keep a lookout and to discover, and the principle we have stated should be applied by the Courts to the various phases of fact arising upon the testimony, and juries should not be left to determine the case simply under the general language of the rule. This, it seems to us, is the only way in which the rule can be properly applied in the presence of a duty like that which is imposed upon railroad companies as to persons or property upon the track. To say that the principle of *Davies* v. *Mann* does not apply until the discovery of the danger is to practically abrogate the duty. It may be here observed that a recovery is permitted by a person who, being on the track when there is no immediate danger, is stricken down by the visitation of Providence, when he might have been discovered by the exercise of ordinary care. There being no negligence in such a case by simply going upon the track, there is no contributory negligence, and the same is true as to children of such tender years as to be incapable of discretion.

We have not attempted to discuss the law of contribu-

SMITH *v.* RAILROAD.

tory negligence in all of its aspects, and our chief object
has been to meet the arguments of the able counsel,
which were directed against the existence of the duty
under consideration, and also the application of the prin-
ciple of *Davies* v. *Mann* until the actual discovery of the
danger. It has been suggested that when the engineer
fails to exercise ordinary care in discovering persons on
the line of the track he is not guilty of ordinary negligence,
which all the text writers and our own Court time and
again have declared is the legal effect of a want of ordi-
nary care (McAdoo's case and authorities cited), but that
his conduct is so willful and wanton that there can be
no contributory negligence whatever. Under such a rule
not only will railroads be made insurers against the con-
sequences of the negligence of all persons trespassing upon
their property, but even the engineer may be convicted of
murder by reason of a mere inadvertence. It is hardly
necessary to say that all of the decisions of our Court are
against such a position, and this is the general current of
authority. We think that in declaring the duty we have
been considering this Court has gone as far as a reasonable
exercise of its authority permits. If such a revolutionary
change is to be made in the law of negligence, or rather if
the law of negligence is to be altogether abolished in such
cases, it should be done by the Legislature and not by the
Court. *Jus dicere non dare.*

For the reasons given in the first two divisions of this
opinion we think there should be a            New Trial.

MACRAE, J.: I concur in the conclusion reached by the
Chief Justice that there should be a new trial, but I do not
concur in any expressions which indicate that there is a
duty upon the defendant's servant, in the absence of rea-
sonable ground of apprehension, to anticipate that a per-
son, *sui juris*, will voluntarily expose himself to danger.

SMITH *v.* RAILROAD.

AVERY, J., dissenting: I concur with the Court in so far as the opinion adopts and approves the doctrine laid down in Deans' case, though the reasoning may not in all respects be in accord with my views. But I do not assent to the conclusion that railroad companies are relieved of liability for negligently killing a drunken man who is lying insensible upon the track, when under exactly similar circumstances a sober man, who had fallen asleep at the same place, would have the right to recover. I freely concede that the Court has found abundant authority and could have arrayed many more citations from text-books and decisions of other States to sustain its conclusion and justify the announcement that the *dicta* in a number of cases decided here should not be followed. But the same reasoning would warrant us in turning back the dial and not only overruling such *dicta* as that companies must use air-brakes on passenger cars, but many actual rulings based upon the idea that the definition of negligence under given circumstances is not fixed and immutable, but must be modified as we discover its want of adaptability to new conditions.

But it is urged, first, that railway companies owe no such duty to a man whose sleep is due to drunkenness as to one who soberly and deliberately yet carelessly lies down on the track; second, that in fact a drunken man, though sound asleep, is not excused by law for drunkenness but is deemed to be willfully remaining on the track and thereby co-operating consciously with the careless servant of a company in causing his own injury.

Applying the harsh doctrine of the criminal law, adopted and adhered to only in order to protect life, person and property from the consequences of fraud and violence, it is insisted that drunkenness is an aggravation rather than an excuse for carelessness as for crime. But, as far as it is consistent with the public safety to do so we find that the law

follows the natural instincts of higher humanity and protects instead of punishing these unfortunates when their weakness has made them victims and sufferers instead of criminals.

The law lends its sanction to no such rule as that; where the conduct of a drunken man is neither criminal nor tortious he forfeits any right or remedy to which he would be entitled if sober. Discussing this doctrine, then, as enunciated by Lord PENZANCE, and conceding the possibility of the existence of a precedent contributory negligence, which does not defeat recovery as it would if concurrent with the negligent act of a defendant, the question arising here is whether the careless act of a drunken man who is already asleep upon the track when the engineer first has opportunity to see and understand his condition is guilty of concurrent contributory negligence. It is familiar learning that a deed or other written agreement executed by one so drunk as to be unconscious of what he was doing could be avoided even in a court of law under our former system. A contract to be valid must necessarily involve the intelligent assent of the mind of him who is to be bound by it, and it is for this reason that "total drunkenness is now held to be a complete defence" when an action is brought against him to enforce it. *Morris* v. *Clay,* 8 Jones, 216; *Cook* v. *Clayworth,* 18 Vesey, 12. "Where the intoxication rises to the degree which may be called excessive drunkenness where a party is utterly deprived of his reason or understanding when he enters into it," Justice STORY says that "equity will relieve against it because in such a case there can, in no just sense, be said to be a serious and deliberate consent on his part, and without this no contract or other act can or ought to be binding by the law of nature." 1 Story Eq. Jur., sec. 231.

The negligence of a drunken man, who has been insensible for some time, is not to be distinguished from the sup-

posititious case of a man who has fallen asleep on the highway (put by Parke, B., in *Davies* v. *Mann* as giving a clearer right of action than the injury to the fettered ass), unless we concede by a fiction of the law the drunken man is deemed to be still concurring in taking the risk of exposure on the track, while the man, whose sleep upon the highway is induced by other causes, is held to have been guilty of precedent carelessness in going to sleep upon the track. If the learned Baron correctly applied his own illustration the negligence of a sober man who sleeps upon the highway is necessarily previous to that of him who drives over him after he is asleep.

"An intoxicated man" (said the Court of Connecticut by way of illustration in *Isbel* v. *Railroad*, 27 Conn., 393) "is lying in the traveled part of the highway, helpless if not unconscious, must I not use care to avoid him? May I say he has no right to encumber the highway and therefore carelessly continue my progress regardless of consequences?" Referring to this high authority Mr. Wood (2 Vol. Ry. Law, p. 1267, sec. 320) says: "The doctrine of this case has been approvingly cited by the Courts in several cases, and seems to us to define the true rule of duty and obligation resting upon railway companies as well as to persons lying upon their tracks, and young children as to animals. The rule may be said to be that a railroad company is bound to keep a reasonable lookout for trespassers upon its track, and is bound to exercise such care as circumstances require to prevent injury to them. If a person seen upon the track is an adult person and apparently in the possession of his or her faculties, the company has a right to presume that he will exercise his senses and remove himself from his dangerous position, and if he fails to do so and is injured, the fault is his own, and there is, in the absence of willful negligence on its part, no remedy." In

the same section that author (p. 1269) after citing the leading case of *Lake Shore Railroad* v. *Miller*, 25 Mich., 279, quotes from the opinion of Chief Justice CHRISTIANCY as follows: "If, however, he, the engineer, sees a child of tender years upon the track, or any person known to him to be, or from his appearance giving good reason to believe that he is, insane or badly intoxicated, or otherwise insensible of danger or unable to avoid it, he has no right to presume that he will get out of the way, but should act upon the belief that he might not or would not, and he should therefore take means to stop his train in time." *Needham* v. *Railroad*, 37 Cal., 409. Of course numberless authorities can be cited against this position, and if they are as reasonable as they are numerous I would be constrained to yield to them.

From these authorities we gather the rules:

1. That it is the duty of railway companies to keep a reasonable lookout (at common law as well as where there is a statute).

2. That they owe this duty to trespassers upon the track as well as to others.

3. That if by keeping this reasonable lookout the engineer discover a person that he knows to be, or has good reason from his appearance to believe to be, badly intoxicated, he must use all the means at his command to stop the train.

These authorities therefore sustain our position in Deans' case, Clark's case and others that have followed in the same line, using almost the identical language that we are urged to modify. It will be seen that it occurred neither to the Supreme Court of Connecticut nor to Mr. Wood (who is one of the fairest of all American writers upon the law of railroad corporations) to draw a nice distinction between the duty of keeping an outlook for town trespassers and country trespassers, for sleepy men and drunkards.

The point to which our attention must be chiefly directed is whether the fault of the plaintiff's intestate was not only a contributory but a concurring and co-operative cause of the injury sustained. *Meeks* v. *Railway,* 56 Cal., 513; Cooley on Torts, p. 679, 683; *Tuff* v. *Harman,* 5 C. B. Reports, N. S., 573. And the settlement of it must depend greatly upon the question whether a helplessly drunken man is fictitiously held more capable of concurring and co-operating in or consenting to his own death than one who has fallen asleep under other influences.

It is needless to multiply authorities to meet the numerous citations offered by the Court. It is sufficient for me that this Court has declared that a company would not be relieved of the imputation of what would ordinarily be actionable carelessness on the part of its engineer because the victim of his negligence happened to be a slave to an unfortunate habit. If it is the duty of an engineer to see what by reasonable care he can see in his front, and to avoid injury that proper watchfulness would enable him to avert, we see no reason for counting the obsolete cases in musty digests to justify a nice distinction that commends itself, neither to our sense of right and justice nor our reason. It is no more unreasonable to require an engineer to look out for the safety of a drunkard than for the protection of one who, in the full possession of his faculties, willfully lies down to sleep in a dangerous position. When a Court has laid down a principle that accords with the highest conception of what is morally right and is supported by some authority I cannot concur in acknowledging that it is our duty to go back and count and analyze the cases cited by the author relied upon in the Court to sustain us, in order to destroy the force of our own *dicta,* or overrule our settled decisions, unless the principle overruled has worked wrong and injustice in its enforcement.

It is not suggested or pretended that the best interests of
society require that an engineer should be excused from
culpability in killing a victim of intoxication who falls on
the track in an unconscious condition, when if the same
man had at the same place consciously incurred the risk
of lying down to sleep the company would have become
answerable in damages.

Following suggestions originating chiefly in *Meredith* v.
*Iron Co.*, 99 N. C., 580, and *McDonald* v. *Carson*, 94 N. C.,
500, and the plain intendment of the Legislature, this
Court, in *Emry* v. *Railroad*, 102 N. C., 224, laid down the
rule that the *nisi prius* Judge might in his discretion sub-
mit all or only a portion of the issues raised by the plead-
ings, provided those adopted were such as to afford oppor-
tunity to pass upon any view of the law arising out of the
evidence, and were sufficient as a basis for the Court to
proceed to judgment. This ruling has since relieved us
of difficulty in many cases and promises to remove in the
near future what has heretofore proven a fruitful source of
controversy. The ruling upon this point has been approved
in *Lineberger* v. *Tidwell*, 104 N. C., 510; *McAdoo* v. *Rail-
road*, 105 N. C., 151; *Bond* v. *Smith*, 106 N. C., 564; *Carey*
v. *Carey*, 108 N. C., 271; *Waller* v. *Bowling*, 108 N. C., 295;
*Blackwell* v. *Railroad*, 111 N. C., 153, and in several other
cases. In *Scott* v. *Railroad*, 96 N. C., 428, it was stated by
Chief Justice SMITH, delivering the opinion of the Court,
that while two issues might be submitted, one embodying
the question whether the defendant has been negligent, and
another whether the plaintiff has been negligent, the same
end might be attained by submitting simply the question,
"Whether the defendant's negligence was the cause of the
injury," and telling the jury if they found it due to the
plaintiff's carelessness to respond in the negative. In
*Kirk* v. *Railroad*, 97 N. C., 82, it was held error, after

refusing to submit an issue as to contributory negligence, to give the instruction as suggested in Scott's case. In *McAdoo* v. *Railroad, supra,* while it was declared not to be error to submit either one issue involving the question of the defendant's negligence alone or that and an additional inquiry as to contributory negligence, it might help the jury to reach a satisfactory conclusion in cases where it was contended that some carelessness supervening after the previous negligence of the plaintiff was the proximate cause of the injury, to submit the issues substantially as follows: "1. Was the defendant negligent?   2. Did the negligence of the plaintiff contribute (not concur) in causing the injury?   3. Could the defendant by the exercise of ordinary care have avoided the injury, notwithstanding the previous negligence of the plaintiff?"   That these are all questions which may be raised by the pleadings where an action is brought to recover damage for injuries alleged to have been caused by negligence and which are involved in all cases where a dispute arises as to whether the injury is due proximately to the fault of the one or the other of the parties, no one will venture to deny, since, adopting even the extreme view insisted on by defendant's counsel, that the subsequent negligence of the defendant must be willful, it is none the less a supervening cause of injury.   Contributory negligence must be pleaded specially in the answer. Does not pleading it raise an additional issue?   If the testimony tends to show that subsequent carelessness of defendant was the proximate cause of the injury complained of, proof of the allegation will excuse contributory negligence.

But it is insisted that all of these cases, too, must be overruled because, as is assumed, the Judge below was led into an illogical and erroneous charge by the suggestions of the Court in the opinions as to the possible or proper issues that might be submitted in actions brought for negligence.

SMITH v. RAILROAD.

The principle involved (and not the issues) was discussed in Deans' case, and the error consisted not in the form of the issues, but the failure of the Judge to submit any issues at all to the jury. The first issue submitted in this case was of itself sufficient, and if properly explained to the jury there is no reason why the response to it should not have been decisive of the controversy, except as to the question (*Denmark* v. *Railroad*, 107 N. C., 185) of the amount of damage, in the event of a finding upon it in favor of the plaintiff. But in the case before us it seems that the issues were framed in a peculiar manner, the first so as to involve not only the question of the defendant's negligence but that also of proximate cause. It was as follows: "Was Joseph Smith killed by the negligence of the defendant?" Not, as suggested in the cases criticised, "Was the defendant negligent or guilty of negligence?" While the third issue would lead to the very same result by eliciting an answer to the question whether the accident could have been averted by ordinary care on the part of the defendant, being in form as follows: "Could the defendant, by the exercise of ordinary care and prudence, have avoided the injury?" an affirmative answer to that inquiry did mean, as the Court instructed the jury, that an injury which could have been prevented by due diligence on the part of defendant company was due to its negligence. The Judge who tried the case below did not frame the issues and was not asked to remodel them. In instructing the jury upon them, in the shape in which counsel had left them, he told them properly that whether they passed upon the first or third issue the very same ultimate question was raised, whether the negligence of the defendant was the proximate cause supervening subsequent to the fault of the plaintiff. Some confusion has arisen out of the fact that, in some instances where the abstract principle that these issues

might be framed has been stated, the same mistake has been made, as here, viz., by embodying the question of proximate cause, as well as of defendant's negligence, in terms in the first issue; but it will be remembered that in Deans' case it was immaterial to discuss the form of issues not submitted at all. The cases in which the suggestion that it might aid the jury in understanding questions of negligence in some instances to submit these issues or where that plan has been approved are *McAdoo* v. *Railroad, supra; Denmark* v. *Railroad, supra; Bean* v. *Railroad,* 107 N. C., 731; *Blackwell* v. *Railroad, supra.*

By reference to the case of *Bottoms* v. *Railroad,* 109 N. C., 73, will be found three issues that are framed substantially in accordance with the suggestion of this Court, and which the most illiberal critic would not venture to say led to confusion or to any illogical results. On the contrary, it can be seen at a glance that they were so framed as to aid the jury in understanding the several stages of the findings upon which the ultimate liability depended. It has been suggested heretofore that perhaps this system presented the questions involved so clearly as to afford opportunity to an unfair jury to give expression to their prejudices in the verdict, but never that it might, when properly understood, give rise to confusion. When verdicts are against the weight of evidence, or damages excessive, the corrective is in the power of the trial Judge to set aside verdicts— a power which Judges who are fair and just do not hesitate to exercise—and of the Legislature to provide as far as may be for the selection of intelligent and unbiased jurors.

I concur with the Court in the ruling that the doctrine laid down in McAdoo's case should be followed, but it is doubtful whether the language of the issues can be fairly construed so as to show that the charge of the Judge was in conflict with the principle there enunciated.

CLARK, J., dissenting: When a person is walking on the track the engineer is to presume that upon sounding the signal he will get off and is not called on to slacken speed or stop (*Meredith* v. *Railroad*, 108 N. C., 616) unless he recognizes him in time as an insane or deaf man, or unless it is a child without sufficient discretion. *Bottoms* v. *Railroad*, at this Term.

If a man, in a paroxysm or from drunkenness, or asleep, is lying on the track and the engineer sees him in time to avert the injury and does not do so, the company is liable. Why? Because the negligence of the man does not authorize the engineer to kill him or cripple him and if, after discovery of his helpless condition, when made in time to avoid injury, the man is killed or crippled, such killing or crippling is wanton or reckless and the company is liable, though of course the negligence of the party on the track continues up to the very moment of the impact.

Now, take this state of facts as found by the jury. The man is helpless, lying prone upon a railroad track and the engineer, by the exercise of ordinary care in keeping a proper lookout, could have discovered the helpless man in time to avoid killing or crippling him, but because he was not using ordinary care and was negligent in that duty the engineer does not in fact see the helpless man in time and runs over him: is not the company liable? But it is said that the company owes no duty to the man lying helpless on the track. This plea is the same as one made of old, "Am I my brother's keeper?" And we are told that that brother's blood "cried from the ground."

In *Clark* v. *Railroad*, 109 N. C., 430, it was held (it is true by a divided Court) that the railroad company was liable for killing a man on a short trestle, though the man was walking. The company was held responsible, though the engineer on a rapidly moving train could hardly have

had time to calculate exactly where the trestle was and that at the respective rates the man and engine were moving the engine would overtake the man exactly at that spot where he could not easily have stepped off. That case is a precedent and entitled to due weight as such. If the company is held to liability for striking a walking man (who is expected to step off) because the engineer cannot calculate that he will overtake the man at a particular dangerous spot, for a stronger reason should the company be liable when the man is down on the track and the engineer can know that he is in a dangerous place with less trouble than making a calculation and by the exercise of no other faculty than the use of his eyes in keeping the ordinary lookout which his duty to the passengers and train in his charge requires him to keep any way.

Population is increasing and likewise the speed and rapidity of railroad trains. It will be more and more impossible to keep people off the track as the country settles up. Their being there is no license to kill or cripple them on sight. The railroad companies have the right of way over their own tracks, but they must use it with reason and with a regard to human life. "*Sic utere tuo, ut non alienum laedas.*" If the man is walking on the track he is reasonably to be expected to get off in time, especially if the whistle is sounded. If he does not, clearly the company is not liable. The man is negligent and the company shows neither wantonness nor recklessness. If the man is crossing the track, he must look and listen. If he does not and the engine strikes him, it is clearly his fault and there is no recklessness or wantonness on the part of the engineer, for as the man has only five feet to go clearly the engineer could not see him in time to avoid striking him. If the party struck is a mere child, or live stock, and the engineer could have seen them in time to avoid

injury, and does not, the company is liable because of its own negligence in not keeping a proper lookout. Its failure to keep such lookout is such recklessness as makes it liable, for it "owes no duty" to the live stock or the child. If the man is down on the track he is as helpless and as little to be expected to get off as a little child or live stock. There is no more deadly a machine than a modern sixty or one hundred-ton engine driving across the country on its narrow ribbon of steel at sixty miles an hour. Whatever it strikes fairly is killed as surely as if struck by a cannon-ball. Commerce requires the free use of the track by these deadly machines. But the hand upon the throttle-valve must be steady and a lookout for danger well kept. This is common sense and justice. It can never be made a part of the law of the land that these Goliaths of mechanism can kill or crush whatever they shall find in their path. Live stock and children they must look out for. If by failure to do this they are injured the company is liable. The safety of a man lying on the track cannot be insured. He has no business to be there. But if the engineer on a passing train, by ordinary care in keeping the lookout which his duty to the safety of the train requires, could see the man (as the jury find) in time to avoid killing him and does not do so, this negligence in one vested with so important a trust is recklessness which renders the company liable notwithstanding the negligence of the party struck by the engine.

Respect for the doctrine of *stare decisis* forbids us to so soon overrule the decisions of this Court in the late cases of *Deans* v. *Railroad*, 107 N. C., 686; *Clark* v. *Railroad*, 109 N. C., 430, and others on that line.

The decision in *Deans* v. *Railroad, supra*, imposed no additional duty on railroad companies. The company was, and is, liable for a failure to keep a lookout if thereby injury

49

is caused to its passengers, to live stock or to a little child. That decision merely held that the same failure to keep a proper lookout would make the company liable as to a man lying in a helpless condition on the track. This does not, as argued, abolish or affect the doctrine of contributory negligence. The failure of one in charge of so powerful, dangerous and rapid moving a machine to keep a proper lookout is recklessness which makes the company liable whenever the jury find that, by a proper lookout, the helpless man could have been discovered in time to avoid killing him. Human life is worth that much consideration if it is worth any thing.